lessor of the plaintiff prevented other persons from purchasing at the sheriff's sale, by declaring that he would not injure those in possession he is bound to carry his engagement into full execution, on receiving an indemnification.

Yeates, J. subjoined. We lay down no general rule on this subject. Several suspicious circumstances attend the plaintiff's surveys, and it is highly dubious, whether they were actually made on the ground. Two of the longest lines were not run. It is admitted by the plaintiff's counsel, that a chamber survey cannot vary the description in the application, and that the real survey must be returned into the office of the surveyor general. The time when these surveys were returned, becomes important to the true decision, and it lay on the plaintiff to show it satisfactorily. Unless there has been an actual survey by Scull, and that too returned before the defendant's warrant of acceptance, the plaintiff is not entitled to recover. I agree, that there must be something more than an actual survey by the deputy, to vest the equitable interest on a removed application. But it rather appeared to me, that the return of such a survey fairly and duly made, is *prima facie* evidence of its acceptance by the proper authority. If Funston bought as the trustee of those in possession, there is an end of this business, on his being made fully whole.

Verdict for the defendant, subject to his re-payment of 6l. to the lessor of the plaintiff, which was agreed to at the bar, by the defendant's counsel.

Messrs. Clymer and Duncan, *pro quer.*
Messrs. Ingersoll and D. Smith, *pro def.*

---

Lessee of EDWARD CALDWELL and ELEANOR his wife, and JAMES M'SWINE and BRIDGET his wife *against* JOHN FERGUSON.

' Touching such wordly estate, wherewith it hath pleased God to bless me in this life, I give, demise, and dispose as follows : I give to my brother H., now in Ireland, or his heirs, 200 acres of patented land at W., as mentioned in the patent of 300 acres, and the other undivided 100 acres, I leave to my nephew B., according to the judgment of my executors in dividing the same." B., takes an estate in fee, the lands being wholly woodland and unimproved.

EJECTMENT for 150 acres of land in Turbutt township, on the waters of Warrior's Run.

It was admitted, that the title to the lands in question was vested in John M'Fadden, by patent dated 10th August 1770.

His last will and testament was as follows;

"Touching such worldly estate wherewith it hath pleased Almighty God to bless me in this life, I give, demise, and dispose of the same in the follwing manner and form.   First I give and bequeath to my well beloved brother Hugh M'Fadden, [ now in Ireland, or his heirs,*] two hundred acres of patented land on the waters of Warrior's Run, as mentioned in the patent of said tract of three hundred acres, and the other undivided one hundred acres I leave to my dear nephew Brenard Ferril, according to the judgment of my executors in dividing the same.

"I devise to my said nephew any money that may arise, after my sick-bed and funeral expenses are paid, and my chest and clothes at the widow Scott's in Paxtang.

"I devise to Samuel Hunter my silver coat and jacket buttons, and appoint the said Samuel Hunter and William Wilson, my executors. In witness," &c.,

The lessors of the plaintiff claimed his rights of their wives, as co-heir at law of John M'Fadden.

The defendant claimed under divers mesne conveyances from Bernard Ferril, the devise of one hundred acres, who was since dead; and the sole question was, whether the devise to him was in fee simple, or for life only.   If he took the latter estate, the plaintiff was entitled to recover.

It was admitted, that the lands were of inferior quality, and wholly woodland and unimproved at the time of the testator's death; and that the executors had divided the same, pursuant to the will.

Messrs. D. Smith, Watts and Evans for the defendant, contended, that it could not possibly have been the intention of the testator to give to his nephew a mere estate for life, as it would be an unproductive interest and of no manner of advantage to him.   The value of property is sometimes of considerable moment in a dubious case, to fix the meaning of a will.   How. on Dev. 506.

But on the face of the will itself, the words will carry a fee.   It much resembles the case of Cole v. Rawlinson. 1 Salk. 234. 2 Ld. Raym. The devise to Bernard, the nephew, refers to the preceding devise to Hugh, the Brother, which is in fee.   The particle and joins the two gifts which are included in the same sentence.

*These words were interlined in the original will.

The intention of the testator ought to prevail, if it be agreeable to the rules of law.   1 Burr. 233.   6 Co. 17.   It must be inferred from the whole will taken together.  Cowp. 235.   Introductory words, such as the present, showing that the testator meant to dispose of all his estate, having a powerful effect in the construction of a will. 3 Wms. 295.  2 Vern. 690.   Talb. Cas. 157.  Cowp. 306.  Dall. 226.   The word estate in its natural import will carry a fee, unless there are other words to control it.   1 Term Red. 414.  4 Term Rep. 93.

Messrs. Hall and Kidd for the plaintiff, answered, that the will must be judged of *ex visceribus suis*, and not from collateral averments. For aught that appears, the bequests to Bernard Ferril may be highly beneficial, taken together.

It is admitted that the intention of the testator should govern the construction of his will, but such intention must be clearly expressed in words, and not left to arbitrary conjecture.   If there are no words of limitation, the devisee can take an estate for life only, and this is the settled rule.  3 Burr. 1634. 1898.  Cowp. 306 .356.   Words tending to disinherit the heir at law, are not sufficient to prevent his taking, unless the estate is given to somebody else.   Doug. 793.

There is no case wherein introductory words, such as, " touching the disposition of all of my estate," or the like, have been made use of, that it has been determined a fee was carried thereby alone.   3 Wils. 418. Cowp. 356. 5 Term Rep. 13. Dall. 226.   Such expressions have been made held as mere matter of form.  Doug. 761.

This is not like the Bell-tavern case, for here are two distinct senten· ces and devisee.   The verb, " I leave," is superadded to the last devise ; and the three judges who dissented from Holt in the case cited, agreed, that if the words " I give," had been repeated, it would have altered the construction of the will.   2 Ld. Raym. 832.   In Mitchell's lessee v. Sidebothan, (Doug. 759,) the words were : " I give and demise to A., his heirs and assigns forever, all my lands at B., and I give and bequeath to the said A. all my lands in C."   And it was held that A. only took an estate for life in the lands in C., and the reversion thereof should descend, though the will began with the words, " for those worldly goods and estates, wherewith it has pleased God to bless me," and contained a legacy of one shilling to the heir at law.   In Gaskin's lessee v. Gaskin,( Cowp. 657.) the words were, " as to all such worldly estate as God hath endued me with, I give and bequeath as follows :    I give and devise all that my freehold messuage and tenement lying in G.

together " with all houses, &c., and appurtenances whatsoever, belonging to the same, to M. G. and T. equally :" and then bequeaths, among other pecuniary legacies, ten shillings to his heir at law.   It was determined, that the devisees were tenants in common, and took an estate for life only.

It is not clear, that the testator's brother took an estate in fee simple, and it will not be pretended on the part of the nephew, that he took a larger estate than the brother.   From the interlineation apparent in the original will, it appears, that the words " or his heirs, " were meant as terms of description, and not of limitation.   The testator's brother was in Ireland, and as he could not possibly know whether he was living or not, when the will was subscribed, he made use of those words, to show that in case of his brother's death, the legacy should not be lapsed, but go over to his children.   But the law presumes, that a man even in making his will may alter his intention.   3 Atky. 493.

On the other hand, if these words annexed to the devise to Hugh, are to be construed in the conjunctive as words of limitation, they must necessarily show that the testator knew the meaning of them as terms of inheritances ; and consequently, by omitting them in the succeeding clause, he did not intend that the estate to his nephew should be as extensive as that devised to his brother.

The court inclined to think, that the devise to Bernard Ferril was in fee, but said they would consider the point more fully, and give their opinion in bank.   Under their present impressions, they directed a verdict to be given for the defendant, but if they should form a different opinion on more full reflection, a new trial would be awarded, without costs.

Verdict for the defendant.

This case was afterwards fully considered by the court and judgment given for the defendant in bank, December 27th 1798, by all the justices.