Lummus *v*. Mitchell.

## Lummus *v*. Mitchell.

Prior to the statute of 1822, a devise of lands and personal estate, without words of limitation or perpetuity, gave to the devisee an estate for life only in the lands, but the personal property absolutely, unless in respect to the lands there were a manifest intention to give a fee.

Where such intention was manifest, a fee simple estate passed, without any words of limitation or perpetuity.

In determining what may have been the intention of the testator, all the circumstances of himself, and of his family and estate, apparent from the will itself, as well as the language of the devise in controversy, compared with other parts of the same instrument, and all the provisions of the will, are to be taken into consideration.

WRIT OF ENTRY, brought to recover certain real estate in Claremont, in this County. The writ is dated June 15, 1855.

The will of Samuel Ashley, hereto annexed, makes part of this case.

The plaintiff claims under Eunice Ashley, named in said will, and the widow of said testator. The defendant claims under Luther Ashley, named in said will.

Said Luther Ashley died in November, A. D. 1835, and the defendant, and those under whom he claims, have, since the decease of said testator, been in possession of the demanded premises.

The testator, at the time of the execution of said will, and of his decease, owned about six hundred acres of land in said Claremont, lying on the easterly side of the " west highway, or public road," mentioned in said will.

The greater proportion of the lands described in the devise to said Luther Ashley, as well as of the other lands of said testator, at the time of his decease, were wild and uncultivated.

It was agreed that a verdict might be taken for the defendant, to be set aside in case the court shall be of opinion that, by said will, a fee did not pass to said Luther Ashley, in the lands described in the devise to him—otherwise judgment to be rendered upon the verdict.

### WILL OF SAMUEL ASHLEY.

In the name of God, Amen. The twenty-ninth day of February, Anno Domini 1784, I, Samuel Ashley, of Claremont, in the County of Cheshire and State of New-Hampshire, Esq., being well and strong in body and perfect mind and memory, thanks be given to God for the same, and calling to mind the mortality of my body, and knowing that it is appointed for all men once to die, do make and ordain this my last will and testament, that is to say:

Principally, and first of all, I give and recommend my soul into the hands of God that gave it, and my body I recommend it to the earth, to be buried in a Christianlike and decent manner, at the discretion of my executors, nothing doubting but at the general resurrection I shall receive the same again, by the mighty power of God. And as touching such worldly estate wherewith it hath pleased God to bless me in this life, I give, devise, and dispose of the same in manner and form following, that is to say:

In the first place I give and bequeath to Eunice, my dearly and well beloved wife, the use and improvement of one third part of all my real estate in Claremont aforesaid, and in Winchester, and elsewhere, during the term of her natural life, and the third part of my personal estate forever.

*Item.* I give and bequeath to my son, Oliver Ashley, five shillings, lawful money, over and above what he has already received of my estate.

*Item.* I give and bequeath unto my son, Samuel Ashley, five shillings, lawful money, over and above what he has already received of my estate.

*Item.* I give and bequeath to my son, Daniel Ashley, all my lands in Winchester, with the buildings and edifices standing on the same, he paying to Susanna, my youngest daughter, thirty pounds lawful money at my decease.

*Item.* I give and bequeath to my son, Luther Ashley, all my lands in Claremont that lyeth on the west side of the west highway, or public road running through said town, together with all the buildings and edifices standing on the premises, and also all my stock and farming tools.

*Item.* I give and bequeath to my daughter, Tirzah Spencer, five shillings, lawful money, over and above what she has already received of my estate.

*Item.* I give and bequeath to my daughter, Thankful Alexander, five shillings, lawful money, over and above what she has already received of my estate.

*Item.* I give and bequeath to my daughter, Eunice Hibbard, five shillings, lawful money, over and above what she has already received of my estate.

*Item.* I give and bequeath to my daughter, Susanna Ashley, one hundred and fifty pounds, out of my real estate in said Claremont that I have not already disposed of.

Furthermore, I give and bequeath to my well beloved wife all the remainder of both my real and personal estate, and I will and order that she pay the several aforementioned legacies and bequeathments, debts and funeral charges, out of the estate I

have given and bequeathed to her; the remainder I will that she use, improve and dispose of forever, to whom and in what way and manner, according to her own prudence and discretion, as she shall think proper.

I likewise constitute, make, and ordain Eunice, my well beloved wife, my executrix of this my last will and testament, together with my son, Daniel Ashley, and I do hereby utterly disallow, revoke and disannul all and every other former testament, wills and legacies, bequeaths and executors, by me in any way before this time named, willed and bequeathed, ratifying and confirming this and no other to be my last will and testament.

In witness whereof I have hereunto set my hand and seal the day and year above written.     SAMUEL ASHLEY.     (Seal.)

Signed, sealed, published, pronounced and declared
  by the said Samu'l Ashley, Esqr., as his last will
  and testament, in the presence of us, the sub-
  scribers:

          ABSALOM HOLMES,
          SONFORD KINGSBURY,
              his
          SAM'L ✕ THOMAS.
              mark.

CHESHIRE ss., March 9th, 1792.     The foregoing will, proved in common form, and allowed and approved and ordered to be recorded by John Hubbard, judge of probate.

    Recorded by     MICAH LAWRENCE, Reg'r of Probate.
A true copy of the record,

          Attest:          GEO. W. STURTEVANT, Register.


*A. F. Snow,* for the defendant.

In *Fogg* v. *Clark,* 1 N. H. 163, which was decided in 1818, the court intimate that the old English rule, " that if the testator merely signify his intention that the devisee should have his lands, without other words disclosing his intention as to what estate the devisee is to have in the lands, the devise passes only a life estate," was then a part of our common law.     Very soon

after this intimation of the court, the legislature of this State (see Laws of 1830, page 355,) declare that " words in a will purporting a devise of lands or real estate shall be held to pass a fee unless it appear from their common acceptation that it was the intention of the devisor to pass a less estate," and this provision substantially has remained upon our statute book ever since. It may be contended that this provision established no new rule of law, but was merely declaratory of the common law of this State, notwithstanding the intimation in *Fogg* v. *Clark.*

But assuming that this odious and unjust rule, which is said to defeat almost invariably the intention of the testator, is to be applied in the construction of the will of Samuel Ashley, I propose to give some of the reasons why a fee passed in the lands devised to Luther Ashley.

1. The possession of the demanded premises shows that this has always been the practical construction of the will by the relatives of the testator and others interested in his estate, who were acquainted with his circumstances, and best calculated to judge of his intentions and to give a proper construction to his will.

2. It appears from the language of the devise to Luther Ashley alone that the testator intended to give him a fee. In common parlance, the words " *All my lands,*" &c., would be understood to pass a fee. In *Fogg* v. *Clark* it is held that the words, " *all my landed property,*" give a fee. It requires no little acumen to show a substantial difference in the meaning of these expressions. But in the same sentence the testator not only gives to Luther " all his lands in," &c., with " all the buildings and edifices" standing thereon, but also all his " stock and farming tools." It is conceded, of course, that the entire and absolute interest in the " stock and farming tools" passed to Luther. It seems absurd to contend that when the testator used the words, " all my lands," he meant to give Luther only a life estate, but that when he used the words, " all my stock and farming tools," in the same sentence, he meant to give this property to him absolutely. See farther upon this point, *Franklin* v. *Hunter,* 7 Blackford 488; *Pencil* v. *Wilson,* 4 Grattan 16;

*Spaulding* v. *Huntington*, 1 Day's Cases 8. It is believed that the English rule of construction before referred to has never been recognized in Connecticut.

3. The first devise in the will to the testator's wife Eunice shows that where the testator designed to give merely a life estate and not a fee, he expressed himself in the clearest manner, and made use of the terms, " use and improvement during the term of natural life." *Richardson* v. *Noyes*, 2 Mass. 61.

4. The legacy to the testator's daughter Susanna is charged on real estate in Claremont, " *not already disposed of*," from which it appears that the testator regarded the land previously given to Luther as fully disposed of and devised in fee. By " real estate in Claremont, not already disposed of," the testator undoubtedly meant the six hundred acres of land lying on the easterly side of the " west highway or public road," mentioned in the will, as this land had not previously been disposed of in the will, except so far as the use and improvement of one third part were given to the testator's wife Eunice.

5. It is clear from all the authorities that Daniel Ashley took a fee in all the lands devised to him, by reason of the personal charge upon him to pay thirty pounds to his sister Susanna. *Leavitt* v. *Wooster*, 14 N. H. 562; *Bell* v. *Scammon*, 15 N. H. 390; 4 Kent 540; 1 Roberts on Wills 428. The language of the devise to Daniel is precisely like the language of the devise to Luther. " All my lands in Winchester" are devised to Daniel, and in the very next clause in the will, " all my lands in Claremont that lyeth," &c., are devised to Luther. It cannot be contended with any show of reason that the testator intended to devise a fee to Daniel and a life estate to Luther. And the same language in different parts of the will should receive the same construction. *Hall* v. *Hall*, 7 N. H. 288; *Cook* v. *Holmes*, 11 Mass. 528; *Sargent* v. *Town*, 10 Mass. 303, note 1; *Whittemore* v. *Lord Craven*, 2 Ch. Ca. 169.

6. The lands devised to Luther were mostly wild and uncultivated, and would have been of no value to him unless a fee passed. As the devise to Luther was designed for his benefit, he

of course took a fee. *Sargent* v. *Towne*, 10 Mass. 303 ; *Russel* v. *Eldon*, 15 Maine 193 ; *Homes* v. *Patterson*, 25 Penn. 484.

7. In the lands devised to Luther he must necessarily take a fee, for by the first devise in the will a life estate in a third part of these lands was given to his mother Eunice, who might have survived him. It is even held that when land is charged with an annuity during the life of another, the devisee takes a fee. 1 Roberts on Wills 430.

*Prentiss & Ticknor*, for the plaintiff.

FOWLER, J. By agreement of parties, the only question for consideration is, whether, by the will of Samuel Ashley, a fee in the lands described in the devise to him passed to Luther Ashley. The words of the devise are, " I give and bequeath to my son Luther Ashley all my lands in Claremont that lyeth on the west side of the west highway, or public road, running through said town, together with all the buildings and edifices standing on the premises, and also all my stock and farming tools." The will was made in 1784 and proved in 1792; consequently no aid in its construction is to be gained from the statute of 1822, reënacted in the Revised Statutes and still in force, providing that words in a will, purporting a devise of lands, shall be held to pass a fee, unless it appear clearly that it was the intention of the testator to pass a less estate.

Nothing is better settled than that, at common law, a devise to one generally of lands and personal estate, without any words of limitation or perpetuity, gives to the devisee an estate for life only in the lands, but the personal property absolutely ; unless in respect to the real estate there be a manifest intention to give a fee. *Fogg* v. *Clark & al.* 1 N. H. 163 ; *Deacon* v. *Marsh*, Moore 594 ; *Bullock* v. *Bullock*, 8 Viner's Abr. 238, pl. 10 ; *Kirby* v. *Holmes*, 2 Wilson 80, *b ; Bowes* v. *Blackett*, Cowper 235 ; *Denn* v. *Gaskin*, Cowper 657 ; *Child* v. *Wright*, 8 Durnford & East 64 ; *Small* v. *Allen*, Do. 497 ; *Compton* v. *Compton*, 9 East 267 ; *Dickins* v. *Marshall*, Croke's Elizabeth 330 ;

*Richards* v. *Edmunds*, 7 Durnford & East 633 ; *Viner* v. *Eve*, 5 Adolphus & Ellis 317 ; *Newton* v. *Griffith*, 1 Harirs & Gill 111 ; *Hawley* v. *Northampton*, 8 Mass. 3 ; *Jackson* v. *Wells*, 9 Johns. 222 ; *Jackson* v. *Embler*, 14 Johns. 198 ; *Wait* v. *Belding*, 24 Pick. 129, 133 ; *Wright* v. *Denn*, 10 Wheaton 204.

But if such intention be manifest, a fee simple estate will pass without words of limitation or perpetuity. *Josselyn* v. *Hutchinson*, 21 Maine 340 ; *Godfrey* v. *Humphrey*, 18 Pick. 539 ; *Bradstreet* v. *Clark*, 12 Wend. 602 ; *Baker* v. *Bridge*, 12 Pick. 27 ; 4 Kent's Com., (5th ed.,) 5, 6, 7, 536 ; *Sargent* v. *Towne*, 10 *Mass.* 303.

What, then, was the intention of Samuel Ashley in respect to the lands devised to his son Luther, as gathered from the language of the will itself ? For the devise to Luther Ashley, containing no words of inheritance, must be construed to pass a life estate only in the lands described in it, unless it is apparent from the will itself that the testator intended to give a greater estate.

From a careful examination of the whole will we think there can be no reasonable doubt that the testator intended to pass his whole interest in the lands described in the devise to his son Luther to him. The case finds he owned about six hundred acres of land in Claremont, situate on the easterly side of the highway mentioned in the devise to Luther. After giving to his wife, in the first clause of the will, the use and improvement of one third part of all his real estate in Claremont, Winchester and elsewhere, during the term of her natural life, showing that he had a distinct idea in his mind at the time of the words proper to constitute a life estate, and of the distinction in the phraseology necessary to constitute such an estate and one in fee simple, the testator gives her one third part of all his personal estate forever. In the second and third items he gives a nominal legacy of five shillings to each of his sons Oliver and Samuel, in addition to what they had already severally received from his estate. In the fourth item he gives all his lands in Winchester, with the buildings thereon, to his son Daniel, charging him with respect to the estate devised with the payment of thirty pounds

to his daughter Susanna, at his decease, thus clearly giving to Daniel an estate in fee in the lands in Winchester, on the well settled principle that if he took an estate for life only, he might be damnified by the determination of his interest before reïmbursed from its income for the expenditure of the thirty pounds' legacy to Susanna, charged upon his estate.  2 Jarman on Wills 172, and authorities ; *Doe* v. *Holmes,* 8 Durnford & East 1 ; *Goodlittle* v. *Madden,* 4 East 496 ; *Jackson* v. *Ball,* 10 Johnson 148 ; *McLellan* v. *Turner,* 15 Maine 436 ; *Lithgow* v. *Kavenah,* 9 Mass. 161 ; *Bowers* v. *Porter,* 4 Pick. 198 ; *Wright* v. *Denn,* 10 Wheaton 231 ; *Leavitt* v. *Wooster,* 14 N. H. 562 ; *Bell* v. *Scammon,* 15 N. H. 390.  In the fifth item he gives all his lands on the west side of the west highway in Claremont, together with all the buildings and edifices standing on the premises, with all his stock and farming tools, to his son Luther.  In the sixth, seventh and eighth items he gives nominal legacies of five shillings to each of his daughters, Tirzah, Thankful and Eunice, in addition to what they had respectively previously received out of his estate.  In the ninth item he gives to his daughter Susanna one hundred and fifty pounds out of his real estate in Claremont, not already disposed of.  And lastly, he gives to his wife all the remainder of his real and personal estate, chargeable with the before mentioned legacies, and the payment of debts and funeral charges.

Now, it seems to us impossible to believe, from all these provisions of this will, taken together, that the testator did not intend to give to his son Luther an absolute estate of inheritance in the lands devised to him, subject only to the widow's life estate in one third part thereof.  The case finds that the greater portion of the lands devised to Luther were wild and uncultivated, and in these he could have no beneficial interest unless a fee passed. As the devise was intended for his benefit, it could hardly be contended that, as to this portion of the estate, at least, the testator did not intend to pass what alone would give to the devisee some advantage from the devise to him.  The devise to Daniel, charging him with the payment of thirty pounds to Susanna, thereby

giving him a fee in all the lands in Winchester, the bequest of one hundred and fifty pounds more to Susanna out of lands in Claremont not devised to Luther, the bequest of all the stock and farming tools to Luther, with the lands given him, the similarity of the language employed in the devises to Daniel and Luther; in one case, " I give and bequeath to my son Daniel Ashley all my lands in Winchester, with the buildings and edifices standing on the same;" in the other, " I give and bequeath to my son Luther Ashley all my lands in Claremont, that lyeth on the west side of the west highway or public road running through said town, together with all the buildings and edifices standing on the premises;" the devise to the wife of a life estate in one third part of the very lands thus devised to Luther, with a possibility of her survivorship; the inconsistency of the language employed in the devise to Luther with the idea that thereby was intended to be passed to him only a life estate in two thirds of the lands described, and the possibility of an estate for the residue of his own life in the other third after the decease of his mother, in connection with the circumstance that the greater portion of the lands were then wild and uncultivated, and the charging of the residuary devisee and legatee with the payment of the legacy of one hundred and fifty pounds to Susanna, from the payment of which the lands devised to Luther had been expressly exempted, together with the fact, stated in the case, that the testator at the time of his death owned about six hundred acres of land in Claremont, not disposed of otherwise than by the residuary devise to the wife—all go to satisfy us conclusively that the testator intended to give Luther, whom we infer, from the order in which the children are named in the will, to have been his youngest son, not only his stock and farming tools, but his homestead farm in perpetuity; subject only to the widow's life estate in one third part thereof. It is utterly incredible that a father could have intended to turn off the youngest son, ordinarily a favorite with parents, and who is shown in this instance to have been selected to occupy the family mansion and maintain the dignity and reputation of the family at its ancestral seat, with an inconsiderable legacy of

stock and tools, and the barren privilege of taking during his life the crops from two thirds of the cultivated portion of the homestead farm.

According to the provisions of the agreed case, there must, therefore, be                                            *Judgment on the verdict.*