CHARTER and others *vs.* OTIS.

A testator, by his will which took effect previous to the revised statutes, devised as follows: "As touching such worldly estate wherewith it hath pleased God to bless me in this life, I give, demise and dispose of the same in the following manner and form: first, I give and bequeath to H. my dearly beloved wife, sixty-six acres of land of the farm I now occupy, beginning at the east end, and running south, together," &c. " for her benefit and disposal as she shall necessarily want. I likewise give and bequeath to M. N., my son, ninety-four acres of land, it being part of the before mentioned farm, beginning on the west side of the land willed to his mother, running westwardly; likewise a certain tract or parcel of land lying, &c. containing thirty-two acres and a half, deeded to me by E. S., together with my personal property that is not disposed of otherwise, &c.; likewise to E. C. one young cow; and furthermore my honest debts to be paid."

*Held* that the testator intended to devise the ninety-four acres to M. N. in fee, and that his intention to do so was legally perceptible upon the face of the will.

*Held, also,* that the will being unambiguous, accurate and correct in respect to the location and identity of the lands devised, the person intended as

devisee &c., parol evidence of extrinsic facts, such as that the country was a wilderness and the lands devised were wild and uncultivated, was inadmissible.

*Held, further,* that evidence of the declarations of the testator, to show that a prior conveyance by him of a part of the same land to his daughter E. whose children were the plaintiffs, was a gift to her, was also properly excluded.

Although the introductory clause of a will, declaring the testator's intention to dispose of *all* his "*estate*" does not, of itself, enlarge a particular devise to a fee, yet it is very material to the inquiry concerning the purpose of the testator in relation to the *quantum* of the estate devised.

It is a key to the intention of the testator; and if it shows that he intended to part with his whole interest, the subsequent words will, if possible, be so construed as to pass an estate in fee, to prevent intestacy as to any part of his property.

APPEAL from a judgment entered upon the report of a referee. The action was ejectment, brought to recover the possession of an undivided third of forty-seven acres of land, part of a farm situate in the town of Brighton, in the county of Monroe, of which one Joel Northrop died seised, in the year 1805. Northrop left a will, the material portions of which are as follows: "As touching such worldly estate wherewith it hath pleased God to bless me in this life, I give, demise and dispose of the same in the following manner and form: first, I give and bequeath to Hannah, my dearly beloved wife, sixty-six acres of land of the farm I now occupy, beginning at the east end, and running south, together with her household furniture, and one cow and four sheep, for her benefit and disposal as she shall necessarily want. I likewise give and bequeath to Miles Northrop, my son, ninety-four acres of land, it being a part of the before mentioned farm, beginning on the west side of the land willed to his mother, running westwardly; likewise a certain tract or parcel of land lying on Genesee river, containing thirty-two acres and a half, deeded to me by Enos Stone, together with my personal property that is not disposed of otherwise; likewise to Eunice Charter, my daughter, one young cow; and furthermore my honest debts to be paid."

Charter *v.* Otis.

The testator, by his will, appointed executors, and revoked all former wills. The testator left him surviving two children, viz. Miles Northrop and Eunice Charter. Miles Northrop died in 1854. Eunice Charter died intestate prior to 1830, leaving nine children, her heirs at law, of whom the plaintiffs are six. The plaintiffs claimed, as part of the heirs of Joel Northrop, that the devise to Miles Northrop gave him only a life estate; and that he having died, the heirs of the testator were now entitled to the fee. The defendant was in possession of the premises described in the complaint, being forty-six acres of the farm of one hundred and sixty acres mentioned in the will, at the time of the commencement of this action, under the heirs of Miles Northrop; and he claimed that the devise to Miles passed a fee. He also claimed that the premises in question were a portion of the ninety-four acres of the testator's farm mentioned in the will and devised to said Miles Northrop. On the trial the defendant introduced evidence to show how the farm of one hundred and sixty acres had been divided into two parcels of ninety-four acres and sixty-six acres, respectively, giving the lines and corners of said farm and said division, and to show the occupation by Hannah Northrop, the widow of Joel Northrop, and by Miles Northrop, of parcels of ninety-four acres and of sixty-six acres, respectively, according to such division, claiming under said will; such occupation having been from the time of the death of Joel Northrop. The defendant then offered to prove by Leonard Perrin that at the time of the death of Joel Northrop the country where the lands devised were situated was a wilderness, new and unimproved, with but occasional settlers; and that the two parcels of land claimed by the defendant to have been devised to Miles Northrop were wild and uncultivated. The plaintiffs objected to this proof, and it was excluded by the referee. It was proved, on the part of the defendant, that at the time of making his will, and at the time of his death, the testator resided on the southeast corner of the farm of one hundred

and sixty acres, and what was claimed by the defendant to be the sixty-six acres devised to the testator's wife, having moved there in 1800; that his daughter, Eunice Charter, was married and resided upon fifty acres of land, next west of the said one hundred and sixty acre farm, the said fifty acres having been deeded to her by the said Joel Northrop in April, 1805. The defendant then offered to prove by a witness that after having given said deed to his daughter, Northrop said that he had given the same to her as gift. This evidence was objected to, and excluded.

The referee found that Miles Northrop took only a life estate in the ninety-four acres; that the devise of the ninety-four acres to him was valid and operative, and that the land could be located. And he decided that the plaintiffs were seised in fee of the equal undivided one-third part of the premises described in the complaint, and were entitled to recover the possession thereof. The defendant excepted to the report, and appealed from the judgment.

*J. L. Angle,* for the appellant.

*George G. Munger,* for the respondents.

*By the Court,* JAMES C. SMITH, J.   The first question to be decided is whether under the will of Joseph Northrop, set out in the case, his son, Miles Northrop, took an estate in fee simple in the ninety-four acres of land devised to him, or only an estate for life.   As the will took effect before the revised statutes, and the particular devise in question contains no words of perpetuity, it does not of itself convey a fee, and the question is therefore one of intention, to be collected from the whole will.   I have referred to the numerous cases cited upon the argument, but I find none so similar to this, in all respects, as to control it, although many of them state and illustrate various general principles or rules of construction which bear upon the question, and by which, so far as they

Charter *v.* Otis.

are applicable, I intend to be guided. An attentive examination of the will, in the light of the authorities referred to, and of the principles recognized by them, has satisfied me, not only that the testator in fact intended to devise the lands in question to his son, in fee, but that his intention to do so is legally perceptible upon the face of the instrument.

In the first place, the introductory clause expressly declares the testator's intention to dispose of *all* his " *estate.*" Although this declaration does not, of itself, enlarge the devise in question to a fee, yet it is very material to the inquiry concerning the purpose of the testator in relation to the *quantum* of the estate devised, (17 *Wend.* 398;) it is a key to the intention of the testator, (2 *Preston on Estates,* 206;) and as it shows that he intended to part with his whole interest, the subsequent words will, if possible, be construed so as to pass an estate in fee, to prevent intestacy as to any part of his property. (*Per Thompson, J. in Jackson* v. *Merrill,* 6 *John.* 191.) In view of this rule of interpretation, which is firmly established by English as well as American authorities, it might well be supposed that the subsequent words of disposition which the testator used in connection with the land in question were employed by him for the very purpose of executing, in respect to such land, the intention declared by him in the introduction; that is, to convey his *whole* interest therein. The case of *Doe* v. *Harter,* (7 *Blackf. Ind. Rep.* 448,) was decided upon this precise ground, as appears by the brief and sensible opinion of the court, delivered by Justice Blackford. " The will," he says, " has an introductory clause as follows : ' As to such *worldly estate* as it has pleased God to intrust me with, I dispose of *the same* in the following manner,' &c. There is also this clause: ' And to effectuate this my intention, I bequeath,' &c. (Here follows a bequest to his wife of a support on the plantation, and of specific personal property, and then, by a distinct clause, the gift to his son, which will be presently quoted, and in respect to which the question arose.) The judge proceeds: " The

Charter *v.* Otis.

introductory clause clearly shows, by the use of the word ' *estate,*' the testator's intention to devise the fee. It is well settled that by the word ' estate,' in a will, when descriptive of the testator's interest in the land, and he has a fee in it, a fee passes. (*Doe dem. Lean* v. *Lean,* 1 *Adol. & Ellis,* 229.) But it is admitted that the introductory clause would not, of itself, be sufficient to convey the fee ; there must be something to show that the intention was carried out. The intention is carried out in the present will by what follows, to wit : ' And to effectuate this my intention, I bequeath, &c. * * * and I also will and bequeath that Preston Franklin, my son, shall have the eighty acres of land whereon I now live,' &c. We think the introductory clause, and the words of the devise, are here connected together, and that the devise, which, taken by itself, is only for life, is when considered with the introductory clause with which it is united, a devise in fee." This case is in all substantial respects the same as the case at bar. The sole difference between them is one of unimportant verbiage, for it is just as apparent that the testator Northrop employed the words of disposition in his will, " to effectuate" the intention declared in the introductory clause, as if he had said so in express terms. But I think the case of *Doe* v. *Harter* goes further than any other in the books, and I am not disposed to reverse the judgment below upon its authority alone, especially as the case at bar presents many additional circumstances leading to that result.

1. There is in Northrop's will a residuary clause as to the personal estate, but none as to the real property. This circumstance in connection with an introductory clause like the one before us, has been regarded as very important in many reported cases. In *Frogmorton* v. *Holyday,* (3 *Burr.* 1618,) a testatrix, after declaring in the introductory clause of her will, an intention to dispose of her " worldly affairs and estate," made several specific devises and bequests, and among them a devise of lands to her son John, without words of perpetuity, and afterwards disposed of the residue of her personal

property only. Lord Mansfield, in his opinion, said, " She has declared that she did not mean to die intestate as to *any part* of her real estate. She has specifically named *each* part of it; and her sweeping residuary clause does not mention her *real* estate. Therefore she thought she had fully disposed of *that* before, and consequently she meant this devise to her son John to be a devise *in fee."* Justice Wilmot concurred in this reasoning, and the court unanimously gave judgment in accordance with it. The case also presented some other circumstances in aid of the intention, but the residuary clause was evidently considered as important as any. The reasoning of Lord Mansfield in that case, upon this question, was referred to with approbation in *Denn* v. *Allaire,* (*Spencer's N. J. Rep.* 6,) and *Robinson* v. *Adams,* (4 *Dall.* 12, 21;) and the same argument was used by Lord Kenyon and Justice Grose in *Lane* v. *Stanhope,* (6 *T. R.* 353,) and by Justices Johnson and Patterson in *Lambert* v. *Paine,* (3 *Cranch,* 97.) We were not referred, on the argument, to any reported case in which the reasoning of Lord Mansfield above stated has been dissented from. The respondent's counsel cited two cases in our own state holding that the absence of a devise of the reversionary interest will not turn the life estate into a fee; (*Harvey* v. *Olmsted,* 1 *Comst.* 483; *Van Derzee* v. *Van Derzee,* 30 *Barb.* 331;) but in those cases there was *no* residuary clause, either of real or personal property, and of course no ground for the application of the reasoning which prevailed in *Frogmorton* v. *Holyday.*

2. The devise of *land* to Miles Northrop is coupled with a gift of *personal* property in the same clause; and the same words are used in disposing of each species of property. This shows that the testator meant to give the *same* estate in the real property as in the personal, that is, an absolute estate. This construction is sustained by the cases of *Roe* v. *Pattison,* (16 *East,* 221;) *Doe* v. *Roberts,* (11 *Ad. & El.* 1000;) *Packard* v. *Packard,* (16 *Pick.* 191;) *Morrison* v. *Semple,* (6 *Binn.* 94;) and *Johnson* v. *Morton,* (10 *Barr,* 245.) The

same argument is advanced or referred to approvingly by the Lord Keeper Somers in *Richardson* v. *Bergavenny*, (2 *Vern.* 325;) by Lord Mansfield in *Rose* v. *Hill*, (3 *Burr.* 1881, 1884;) by Justices Tucker and Fleming in *Johnson* v. *Johnson*, (1 *Munf. Va. Rep.* 549;) by Chief Justice Gibson, in *Weidman* v. *Marsh*, (16 *Penn. Rep.* 511;) and by Justice Story, in *Wright* v. *Denn*, (10 *Wheat.* 76.)

But it is suggested by the respondent's counsel that in the cases in which this rule was adopted, the two classes of gifts were accompanied with expressions referrible, and intended to refer, to both, and which were sufficiently comprehensive of themselves to carry the fee in the real estate devised, such as "property," "estate," "moiety," or the like; and that the question turned on the force of such expressions. It is true that such expressions are to be found in some of the cases cited, but I do not understand that the decision turned upon them; indeed, if that had been the case, it is manifest that the circumstance of the gift of an absolute estate in personal property in the same clause with the devise, would have been wholly unimportant, as the fee would have passed without it; yet that circumstance is adverted to and relied upon specially, in all the cases, and *solely*, in some of them.

We are also reminded that the language of many judges and text writers is directly opposed to the proposition above stated. (2 *Jarm. on Wills*, 4*th Am. ed.* 125, *notes*.) But the *dicta* to that effect (for no adjudication upon the point is cited) are all based upon the authority of cases in which the limitation of "dying without issue" was annexed to a *mixed* devise, and the question was whether that limitation should receive the same construction in respect to both kinds of property. That question is by no means identical with this, and however closely analogous the two may be, the authorities relating to the former are, as is well known by all lawyers, directly in conflict with each other. (*Forth* v. *Chapman*, 1 *P. Wms.* 667. *Porter* v. *Bradley*, 3 *T. R.* 145. *Fosdick* v. *Cornell*, 1 *John.* 440. *Jackson* v. *Staats*, 11 *id.* 337. *An-*

*derson* v. *Jackson*, 16 *id.* 382. *Patterson* v. *Ellis*, 11 *Wend.* 259. *Newton* v. *Griffith*, 1 *Harr. & Gill*, 111. *Edelen* v. *Middleton*, 9 *Gill*, 162.)

It can hardly be maintained as claimed by the respondent's counsel, that such a devise simply tends to illustrate the private intention of the testator, and that the objection still remains, *"voluit non dixit."* The testator has used express words of disposition, in respect to both species of property, and if the estate given in the personal property is the measure of the estate given in the lands, he has devised the latter absolutely, or in fee, as effectually as if he had used technical words of perpetuity. A legal intention, legally expressed, is enough. "Any words denoting the entire interest in the thing devised, will pass a fee, as well as the word 'estate.'" (*Per Burrough, J. in Pocock* v. *The Bishop of Lincoln*, 3 *Brod. & Bing.* 26, 27. 7 *E. C. L. R.* 335, 339.) In the forcible language of Chief Justice Wilmot, "Let a testator use what words or expressions he will, if they disclose what he means, it is the law to his family, and must be obeyed; and the indulgence which the law shows to this kind of instrument, is owing partly to the act of parliament which enables persons to devise at their will and pleasure, and partly in respect of the situation which men are in when they make their wills, incapable of getting advice; and therefore the law delivers them from the vassalage of form and technical words, and only expects that their meaning should be told in writing." (*Baddeley* v. *Leffingwell, Wilmot's Notes*, 233.)

3. The devise of a life estate to Miles, leaving him to take a share of the same land as *heir*, is not a probable intention, under any circumstances, (31 *Penn. Rep.* 76,) and especially in view of the language of the introductory clause, and of the rule of construction, which, as we have seen, results from it.

4. The widow had not only a fee in the lands devised to her, but also a life estate, (her dower,) in the lands devised to Miles, (7 *Cowen*, 287; 2 *John. Ch.* 448,) so that if he took but a life estate, it was subject to the life estate of his mother.

This circumstance, alone, would be entitled to but little weight, as it was of course competent for the testator to limit successive life estates upon the same property. But as he has not done so in express terms, and as there are many other indications that he did not intend to do so, I think this circumstance not unimportant. In *Gall* v. *Esdaile*, (8 *Bing.* 323; 21 *E. C. L. R.* 307,) Chief Justice Tindal specially adverted to a similar feature in the will then before him, as evidence of an intention to devise a fee, and said, " The plaintiff's construction would confer interests so complicated as are not likely to have occurred to any testator."

5. It is apparent from the frame and verbiage of the will that the testator was not acquainted with the technical form of a devise of lands in fee, and the law presumes him to have been *inops consilii*.

From these circumstances it seems to me clear that the testator devised the lands in question to his son, in fee simple.

As this conclusion leads to a reversal of the judgment, I might here properly dismiss the case, but for the fact that some important questions of evidence remain, upon which the views of the court ought to be made known, before the case goes back for a new trial.

The first question of that nature is presented by the defendant's exception to the ruling of the referee excluding parol evidence offered by the defendant to show that " the country in which the land devised was situated, was a wilderness, new and unimproved, with but occasional settlers, and that the lands devised were wild and uncultivated." In the examination of this question, the following considerations must be borne in mind. (1.) The only point in litigation, and of course the only one in respect to which the evidence offered is admissible, if at all, is the *quantum* of the estate devised. There is no question of location of the lands, or of identity, either as to the lands devised, the person intended as devisee, or any other essential subject connected with the gift. In all these respects the language of the will is unam-

ambiguous, accurate and correct. (2.) The offer must be deemed to assume that an intention to devise a fee is not clearly manifested by the language of the will, unaided by extrinsic facts; otherwise the evidence is unnecessary, and for that reason was properly excluded. The evidence is therefore offered for the purpose of introducing into the will an intention to devise an estate in respect to which the will is silent—namely, the estate in *remainder* after the life estate of Miles Northrop. (3.) If it is not clear upon the face of the will that the testator intended to devise an estate in fee, the law peremptorily settles the question in favor of the *heir*.

A bare statement of these propositions would seem to demonstrate the correctness of the ruling of the referee upon the question before him; but there are authorities to be found, some of which were cited upon the argument, apparently leading to a different conclusion. It becomes necessary, therefore, to examine them.

The appellant's counsel claims that the proposed testimony is admissible upon the general principle laid down by Mr. Wigram, in his treatise on "the admission of extrinsic evidence in aid of the interpretation of wills," and constituting his "fifth proposition," (page 51.) "The fourth example" stated by him under that proposition presents more particularly the special ground relied upon by the appellant's counsel, and is in these words: "The legitimate effect of circumstantial evidence, in cases in which the *quantity of interest* given by the will is the point in dispute, is not, perhaps, so well defined as in the cases which have already been stated, [i. e. cases in which the *person* or *thing* intended was the point of contention, or the description in the will was *incorrect.*] The proposition, however, that such evidence is admissible, where the question of interest is the point in dispute, is certain." Upon a casual reading of the language which I have here transcribed, it may seem to warrant the reception of the evidence offered in this case; but after a careful consideration of the author's proposition and of the cases cited by him in

its support, I am satisfied that it was not intended to assert
that extrinsic evidence is admissible in circumstances such as
exist in this case, to convert an apparent devise for life into a
devise in fee; or, if the proposition was intended to be thus
broad, it is not, to that extent, supported by authority.

The first case cited by the author as an adjudication upon
the question involved in his proposition, is that of *Lowe* v.
*Ld. Huntingtower*, (4 *Russ.* 532, *n.*, 581.)   But in that case
the words of the will were clearly sufficient, *of themselves, to
pass to the plaintiff an estate in fee simple,* and upon a case
ordered by the vice chancellor, the judges of the court of
king's bench had so certified; but afterwards, on the appli-
cation of the defendants, extrinsic facts were introduced into
the case, and were held to be admissible as evidence, for the
purpose of showing that the testator did *not intend* to devise
to the plaintiff an estate in fee.   In the subsequent important
case of *Miller* v. *Travers*, (8 *Bing.* 244; 21 *E. C. L. R.* 288,)
in which Lord Chief Justice Tindal of the court of common
pleas, and Lord Lyndhurst, chief baron of the court of ex-
chequer, were called on to assist the lord chancellor, the chief
justice, in delivering their joint opinion, adverted to the case
of *Lowe* v. *Ld. Huntingtower*, and remarked that the evidence
of collateral circumstances was there admitted, "not to in-
troduce new words into the will itself, but merely to give a
construction to the words used in the will consistent with the
real state of the testator's property and family; the evidence,"
he said, "is produced to prove facts which, according to the
language of Ld. Coke, in 8 *Rep.* 155, *stand well* with the words
of the will."   This distinction is also forcibly illustrated by
the case of *Miller* v. *Travers* itself.   There, was a devise of
all the testator's freehold and real estate in the county of
Limerick and city of Limerick.   The testator had no estates
in the county of Limerick; he had a small estate in the city
of Limerick inadequate to meet the charges laid upon it in
the will; and estates in the county of Clare not mentioned
in the will.   It was held that the devisee could not be allow-

Charter *v.* Otis.

ed to show, by parol evidence, that the testator intended his estates in Clare to pass under the same devise. It was assumed by the chief justice that if parol evidence was admissible by law, the evidence tendered in the case would be sufficient to establish, beyond contradiction, the alleged intention of the testator; "yet still," said he, "as the devise in question has a *certain operation and effect*, namely, the effect of passing the estate in the city of Limerick, and as the intention of the testator to devise any estate in the county of Clare cannot be collected from the will itself, nor without *altering or adding to* the words used in the will, such intention cannot be supplied by the evidence proposed to be given." The process of reasoning by which this result was reached is sufficiently shown by the following brief extracts from the elaborate and instructive opinion of the chief justice. "The plaintiff contends that he has a right to prove that the testator intended to pass not only the estate in the city of Limerick, but an estate in a county not named in the will. * * * But this, it is manifest, is not merely calling in the aid of extrinsic evidence to apply the intention of the testator, as it is to be collected from the will itself, to the existing state of his property; it is calling in extrinsic evidence to *introduce into the will* an intention not apparent on the face of the will. It is not simply removing a difficulty, arising from a defective or mistaken description; it is making the will speak upon a subject on which it is altogether silent, and is the same, in effect, as the filling up a blank which the testator might have left in his will. It amounts, in short, by the admission of parol evidence, to the making of a new devise for the testator, which he is supposed to have omitted." (*P.* 291.) "Neither of the cases cited afford any authority in favor of the plaintiff; they decide only that where there is a sufficient description in the will to ascertain the thing devised, a part of the description which is inaccurate may be rejected, *not that any thing may be added to the will;* thus following the rule laid down by Anderson, C. J. in *Godb. Rep.* 131. "An averment to take

away surplusage is good, but not to increase that which is defective in the will of the testator." (*P.* 293.) It is apparent from the foregoing extracts, that the doctrine of the case of *Lowe* v. *Lord Huntingtower*, as recognized in *Miller* v. *Travers*, is merely this : that evidence of collateral circumstances is admissible to give to the words used in a will a construction consistent with the state of the testator's property and family, but in cases where a certain estate is devised by the will such evidence is not admissible for the purpose of giving to the devisee a greater estate, or a larger *quantum* of interest than is devised by the words of the will.

The case of *Gall* v. *Esdaile*, (8 *Bing.* 323 ; 21 *E. C. L. R.* 305,) also cited by Mr. Wigram, came before the court on a *special case.* No question of the *admissibility of evidence* was, or could have been decided by the court, as they passed upon the facts which the parties spread upon the record. Besides, there were clear grounds upon the face of the will for the judgment which the court rendered, without looking at the collateral facts. It is not to be supposed that the learned chief justice (Tindal) who took part in the decision, intended to reverse the rule so clearly and forcibly laid down by him a short time before, in *Miller* v. *Travers*.

The only other case cited by Mr. Wigram, is that of *Pocock* v. *The Bishop of Lincoln*, (3 *Brod. & Bing.* 27 ; 7 *E. C. L. R.* 335 ;) and it is referred to by him, not as an authority expressly in point, but with the remark that " the arguments of the court * * * fully recognize the particular point" insisted on by him. The case came before the court on a demurrer to the plea, in which the defendant had alleged that at the time of the devise to him by the testator, his father, in 1795, of " the perpetual advowson of Husbands Bosworth," he was *incumbent of the living*, having been presented to it by his father in 1790 ; whence it was argued in his behalf that unless the fee passed, he could derive no benefit from the devise, and thence an intention was to be inferred to devise a fee ; but the court thought that as devisee he had a very dif-

Charter *v.* Otis.

ferent interest in the advowson from that which he had before as the mere incumbent, and held that the devise gave only an estate for life. Of course there was no question as to the admissibility of evidence, and all that is claimed from the case by Mr. Wigram is that " if no state of circumstances could have been suggested, in which the devisee could *possibly* have been benefited by the devise, without departing from the strict and primary sense of the testator's words, the court must, in favor of the testator's intention, have accommodated their meaning to the circumstances of the case, by analogy," says the author, " to the cases referred to under the first and second examples, and upon the *same* principle." The cases here referred to are those in which either the *person* or *thing* intended by the testator is the point of contention, (1*st Ex.* *p.* 53,) or the description in the will is *incorrect*, (2*d Ex. id.*) and the governing principle referred to is that " where the circumstances of the case make it *impossible* that the words of the will could have been used by the testator in their strict and primary sense, a popular or secondary sense may be put upon them, and extrinsic evidence must be admissible, or a court would be without the means of judging in what popular or secondary sense (if any) the testator may have used the words." (*P.* 52.) Keeping in mind this principle, and the analogy suggested, we can see clearly the nature and extent of the rule which the author intended to assert. It is simply an application to the subject of extrinsic evidence in aid of the interpretation of wills of the presumption of law that every devise is intended for the benefit of the devisee ; and it admits extrinsic evidence to show that a gift of an estate for life could not possibly have benefited the person to whom it was devised. It is analogous to the rule that a charge upon the devisee carries a fee by implication. The limits and propriety of the rule are illustrated by the case of *Rose* v. *Rawlinson*, (3 *Bro. P. C.* 7.) There, A. devised to B., her son, all her right, title and interest in a certain messuage called " The Bell Tavern," but without adding any words of inher-

itance.  It appeared by extrinsic evidence, that before the devise, the messuage was settled upon A. for life, remainder to B. in tail, remainder to A. in fee ; and it was *held* that by the devise the fee passed, for if B. took no more by the will than an estate for life, he had really nothing given him, because he had *more than an estate for life* in it before.  It is true this case came before the court upon a special verdict, and the question was not presented as one of evidence strictly, but on the argument it was urged, in opposition to the very ground on which the judgment proceeded, " that to pass lands by a will, there must be sufficient words, in writing, to dispose of the estate, without regarding things *foreign to the will itself;* for if there be not words, the estate remains undevised, and is left to the disposition of law :" but the position was overruled.   The cases of *Standen* v. *Standen,* (2 *Ves. jun.* 589 ; *Selwood* v. *Mildmay,* (3 *id.* 306 ;) and *Day* v. *Trigg,* (1 *P. Wms.* 286,) were decided upon principles analogous to that of *Rose* v. *Rawlinson.*   (*See comments of Tindal, Ch. J. upon these cases, in Miller* v. *Travers, pp.* 292, 3.)

The testimony offered by the defendants in the case at bar, does not come up to this rule.  It is manifest that the devise to Miles Northrop, of a life estate in the lands in question, even assuming them to have been wild and uncultivated, was beneficial to him.   He had no estate in the land before the devise ; he was not by the will subjected to any charge respecting it ; and it cannot be affirmed that the life estate was absolutely of no value.   By the law of our state, a tenant for life, of wild lands, may undoubtedly fell part of the timber, so as to fit the land for cultivation, as well as take reasonable estovers. (*Kidd* v. *Dennison,* 6 *Barb.* 9, *and cases there cited by Paige, J.*)

I am not aware of any case, in this state or in England, in which evidence similar to that which was offered in this case has been held admissible, or in which a devise of wild and uncultivated land, without words of perpetuity, or equivalent words, has been held to pass the fee.  In support of

both these positions, however, the counsel for the defendants has referred us to the following cases in other states of the union: *Sargent* v. *Town,* (10 *Mass.* 305;) *Ridgway* v. *Carter,* (*Id. note;*) *Caldwell* v. *Fergusson,* (2 *Yeates,* 250;) *Russell* v. *Elden,* (3 *Shep.* [15 *Maine,*] 193;) *Holmes* v. *Patterson,* (25 *Penn.* [1 *Casey,*] 485;) and *Lummis* v. *Mitchell,* (34 *N. H. Rep.* 39.) I have examined them all, and although they contain expressions of opinion respecting the positions which they are cited to sustain, I do not think any of them, except the case of *Sargent* v. *Town,* can be regarded as an adjudication upon the point in question, and the decision in that case is the result of argumentation, which, for reasons already stated, seems to me unsound.

I think the testimony was properly excluded.

It follows from the foregoing reasoning that the referee also properly excluded the evidence tendered, of the declarations of the testator, to show that the prior conveyance by the testator of a part of the same lot to his daughter Eunice, whose children are plaintiffs in this action, was a gift to her.

For the reasons above stated in respect to the construction of the words of the will, the judgment should be reversed, and a new trial ordered.

[MONROE GENERAL TERM, December 1, 1862. *Johnson, J. C. Smith* and *Welles,* Justices.]