SCHUCK v. SHOOK.

*(Supreme Court, Special Term, Niagara County.   April 12, 1890.)*

WILLS—CONSTRUCTION—AFTER-ACQUIRED PROPERTY.

Testator devised a tract of land to his widow, "being all the real estate I am now seised and possessed of; also all my personal property, horses, cattle, wagons, harness, farm tools, grain, hay, and oats, mortgages and money—about $2,100—I am now possessed of, or may die possessed of; also household furniture, bed, bedding, etc., etc., whatsoever I may die possessed of; to have and to hold, first erecting me a monument to cost not less than $50." After making the will, testator purchased land with part of the personalty which he had bequeathed to his widow. He left no children. The income of his estate was barely sufficient to support his widow. *Held*, that the widow took the land acquired by testator after he had made his will.

Ejectment by Etta Schuck against Dora P. Shook. Plaintiff demurs to the answer on the ground that it does not state facts sufficient to constitute a defense.

*M. L. Burrell*, for plaintiff.   *Hickey & Hopkins*, for defendant.

LEWIS, J. Jonathan Shook, who was the defendant's husband, and the paternal uncle of the plaintiff, in the year 1882 made his will. He died in 1883, leaving him surviving the defendant, his widow, no children or descendants of children, nor father nor mother, but left him surviving seven brothers and sisters, or the descendants of brothers or sisters. That portion of the will material to the questions involved in this demurrer is as follows: "I, Jonathan Shook, * * * being desirous of making an equitable and proper disposition of my property at my decease, do make, ordain, and publish, etc.: *First*. After all my legal debts are paid and settled satisfactory to my executors, I give and by these presents do bequeath to my beloved wife, Dora Palmer Shook, four acres of land situated on the home farm, east of the barn, where I now live, on the Mountain road, so-called, between Lockport and Pekin; said land being all the real estate I now am seised and possessed of; also all my personal property, horses, cattle, wagons, harness, farm tools, grain, hay, and oats, mortgages and money—about $2,100—I am now possessed of, or may die possessed of; also household furniture, bed, bedding, etc., etc., whatsoever I may die possessed of; to have and to hold, first erecting me a monument to not cost less than fifty dollars, to be erected under the direction of my executors. In the event of my wife dying before me, my property and estate will be used in accordance with the provisions of my last will and testament, or by the statute of this state." After the execution of his will the testator purchased 30 acres of land in the county of Niagara, paying therefor with the personal property, stated in his will as being of the value of $2,100. It is claimed by the plaintiff that, as to the 30 acres, the testator died intestate; that plaintiff's father, John Shook, who was a brother and heir at law of the testator, inherited an interest in the 30 acres, and the plaintiff, by virtue of the will of John Shook, became the owner of the undivided one forty-second part of the 30 acres; and she brings ejectment to obtain possession thereof from the defendant. The defendant claims title to the 30 acres under the will of her husband, the testator. The plaintiff demurs to the answer on the ground that it is insufficient in law to make out a defense. The question, therefore, presented is, did this after-acquired land pass to the defendant under the will of her husband? If so, the demurrer should be overruled.

The testator left an estate of small value. The income of it would be barely sufficient to support his widow by the strictest and most careful economy on her part. He saw fit, after making his will, to convert the personal property which he had devoted to the support of his wife into this land; and, if he intended thereby that she should have simply the widow's dower in the land, he made a serious inroad upon her means of support. It is clear that

at the time of making his will he intended that his widow should have all there should be left of his estate after paying his debts, the expenses of administering his estate, and the cost of a monument. Nothing thereafter occurred showing his intention to change this purpose, unless it be the converting of the personal property into real estate. It being apparent that it was the testator's purpose at the time of making his will to dispose of his entire estate, the will should be construed, if possible, so as to prevent intestacy as to any part of his property. *Lent* v. *Lent*, 24 Hun, 436; *Jackson* v. *Merrill*, 6 Johns. 185. From the phraseology of the will it is quite apparent it was drawn by some person unaccustomed to preparing such instruments. It is bunglingly and inartistically drawn, and still the desire of the testator that his widow should enjoy his entire estate after paying debts, etc., is quite clear. In *Thurber* v. *Chambers*, 66 N. Y. 42, Chief Justice CHURCH said that "it is a general rule that provisions in a will, intended for the support of the wife, will receive the most favorable construction to accomplish the purpose intended." The doctrine at one time prevailed that, as between the wife and heir, the will should be construed favorably to the latter, upon the theory that the ordinary testator would be likely to prefer the heir. But the reason for such a rule does not now obtain. The position of the wife in the family and in society has materially improved. She is now esteemed as the equal of the husband, and as competent to manage and control property. She no longer occupies the inferior position that she did in former years; and the rule, as suggested by Judge CHURCH, is in keeping with the present relations of families, and, as between the heir and the widow, the will should be construed favorably to the widow. "Where, upon examination of a will taken as a whole, the intention of the testator appears clear, but its plain and definite purposes are endangered by inapt or inaccurate modes of expression, the court may, and it is its duty to, subordinate the language to the intention. It may reject words and limitations, supply or transpose them, to get at the correct meaning." *Phillips* v. *Davies*, 92 N. Y. 199. We have seen that the testator, in the introductory clause of his will, states that he is "desirous of making an equitable and proper disposition" of his property at his decease; showing clearly an intention to dispose, by his will, of all of his property. This may be considered in arriving at the intention of the testator. *Charter* v. *Otis*, 41 Barb. 525. He further says: "After all my legal debts are paid and settled satisfactory to my executors, I give, and by these presents do bequeath, to my beloved wife," etc.; showing that he contemplated disposing of the estate that he should own at the time of his death. He then enumerates all of the property which he then possessed, consisting of the four acres of land, which he describes as all the land he then owns, personal property of the value of $2,100, and his household furniture, and then uses the comprehensive phrase: "Whatsoever I may die possessed of; to have and to hold, first erecting me a monument," etc. This sentence, if a grammatical construction is to be given to the will, would probably be held to refer to the sentence immediately preceding it, "also household furniture," etc. But grammatical rules, while important in arriving at the meaning of written instruments, must not be allowed to interfere with the evident intention of the writer. The word "whatsoever" has a very broad and comprehensive meaning. Among other definitions given to the word by Webster are "one thing or another," and "anything that may be," etc., sufficiently broad to cover both real and personal property; anything, in fact, in the way of property; and must be held in this case, I think, to include lands. The will contemplates the contingency of the wife dying before the testator. In that event, he says, "my property and estate will be used in accordance with the provisions of my last will and testament, or by the statute of this state." While it is somewhat difficult to see what the testator meant by the expression "will be used in accordance with the provisions of my last will and testament," I think he

intended to secure the erection of a monument, and that then his property should pass as provided by the statutes of the state. His not providing for any residuary legatees would lead to the inference that he intended, if his wife survived him, that she should take the entire estate as it existed at the time of his death. I cannot bring my mind to believe that the testator intended that his wife should have simply a dower interest in the 30 acres of land, and that it should be divided among his heirs, none of whom would receive a sufficient amount in value to be of any especial use to them. The will clearly states that it is his intention to devise his entire real estate. It is provided by section 5, art. 1, tit. 1, c. 6, 2 Rev. St., relating to wills of real estate, that "every will that shall be made by a testator in express terms of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death." A careful reading of the whole will leads my mind to the conclusion that he intended that the entire estate at the time of his death should pass to his widow for her support, and the demurrer must therefore be overruled, with costs against the plaintiff. So ordered.