## ELLEN HARRIS *vs.* JEREMIAH SLAGHT and others.

The introductory part of a will contained these words: "As for my worldly estate, after my decease, be disposed of in manner following." By the third clause, the testator gave and bequeathed to his son F., without words of perpetuity, "thirty acres of land on which he now lives, my young black mare, $200 in six months after my decease, and one sixth part of the personal property not otherwise disposed of." By the fourth clause he gave and bequeathed to his son J. the home farm, and a share of the personal estate, in precisely the same language with the bequest to F., but subject to a charge thereon. There was no residuary clause, in regard to the real estate, as there was in respect to the personal. *Held* that looking at the entire will, it was clear the testator intended to give to his son F. an estate in fee simple in the twenty-nine acres, although there were no words of perpetuity in the devise.

*Held, also,* that although J. took a fee in the home farm, by reason of the charge annexed as a proviso to the gift, this did not affect the devise to F. by way of operating to enlarge the estate he would take otherwise. But that that circumstance might properly be referred to, as evincing an intention on the part of the testator to make a final and complete disposition, by his will, of his entire property, leaving no residue or remainder.

A will contained the following clause: "After the death of my said wife L., it is my will and my order that all my real and personal estate and property of every kind and nature and description shall be sold by my executors, and that the proceeds thereof be paid over to the following named charitable societies, in four equal portions." Then followed provisions giving to his executors, in trust for each of said societies, one fourth part of the whole of such proceeds. *Held* that the bequests to the several societies mentioned were not of the land itself, as land, but merely of the proceeds of the land

Harris *v.* Slaght.

after sale, upon the death of the testator's widow. And that upon the well established rule of equitable conversion, those bequests were gifts of money, instead of land.

The statute of 1860, relating to wills, (*Laws of* 1860, *ch.* 360,) which provides that "no person having a husband, wife, child or parents shall by his or her last will and testament devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one half part of his or her estate after the payment of his or her debts," and declares that "such devise or bequest shall be valid to the extent of one half and no more," had a far broader and more general design than the protection and assistance of certain specified relatives of a testator, and looks rather to the establishment of a general public policy, than to the advancement of private personal interests.

Accordingly *held* that any heir at law of a testator, entitled to share in the estate, in case of the failure of the will, or the establishment of its invalidity in whole or in part, on the ground that some of its provisions are in violation of the above statute, may come into court for a construction of, and an adjudication upon, such will.

Where a testator dies leaving a widow, but no child or parents, and the widow has no interest in raising the objection that some of the devises of the will are void under the act of 1860, a sister of the testator, who is one of his heirs at law and interested in the remainder, after the determination of a life estate, may contest the validity of the will on that ground, and maintain an action to have the validity of the disputed provisions adjudicated upon and determined.

THIS action was tried at the circuit before Justice WELLES, without a jury. The complaint alleged that Cornelius Sebring, late of Ovid in the county of Seneca, and father of the plaintiff, died at Ovid aforesaid, on or about the 30th of January, 1828, seised in fee simple and possessed at the time of his death of certain premises particularly described in the complaint.; that the said Cornelius Sebring, by his last will and testament, devised and bequeathed to his son and one of his heirs at law, Folkerd C. Sebring, a life estate in the above described premises, and that the said testator made no disposition of the reversionary interest in the said premises, but died intestate as to the same; that the said Folkerd C. Sebring entered into the possession of the above described lands, and remained in possession of the same up to the time of his death; that the said Folkerd C. Sebring died on or

about the 14th day of February, 1861, and that the lands above described thereupon descended to the heirs at law of the said Cornelius Sebring, and they became seised in fee as tenants in common of the said property, except as is herein-after stated. That the said Cornelius Sebring left him sur-viving six children and heirs at law, to wit, Folkerd C. Se-bring above mentioned, John C. Sebring, Ellen Harris, the plaintiff in this action, Jane Clarkson, Mary Slaght and Cath-arine Boice; that the said John C. Sebring, Jane Clarkson and Catherine Boice, all died before the commencement of this action; that said John C. Sebring left him surviving children and heirs at law, the defendants, Arad J. Sebring, Elbert N. Sebring and John C. Sebring; said Jane Clarkson left her surviving a son and heir at law, the defendant Folk-erd S. Clarkson, and said Catherine Boice left her surviving, children and heirs at law, the defendants Ellen McCoy, Lois Farrington, Sarah Jane Longstreet, Phebe Boice, John Boice and Cornelius S. Boice; that the said Folkerd C. Sebring died without leaving any children or any lineal descendants, and this plaintiff and the other heirs at law of the said Cornelius Sebring are the heirs at law of the said Folkerd C. Sebring. That upon the death of the said Folkerd C. Sebring, she became seised in fee, and is now the owner as tenant in common, by descent from the said Cornelius Sebring, of the one undivided fifth part of the above described premises; that the said Jeremiah Slaght and Mary Slaght his wife, in right of the said Mary, became in like manner seised in fee, and are now the owners as tenants in common of the one undivided fifth part of the said lands. That the said Ephraim McCoy and Ellen McCoy his wife, in right of the said Ellen, Henry Farrington and Lois Farrington his wife, in the right of the said Lois, William Longstreet and Sarah Jane Longstreet his wife, in right of the said Sarah Jane, John Boice, Phebe Boice and Cornelius S. Boice, in like manner became each seised in fee, and are now each of them the owners as tenants in common of the undivided one thir-

tieth part of the said lands. That during the lifetime of the said Folkerd C. Sebring, the said John C. Sebring and Jane Clarkson, who were each entitled, as heirs at law of the said Cornelius Sebring, to the undivided one fifth share in the reversionary interest in the said lands, sold and conveyed to the said Folkerd C. Sebring, all their right, title and interest in the said lands, and the said Folkerd C. Sebring, by the said sale and conveyance, became seised in fee of the undivided two fifth parts of said lands, and was so seised of said undivided two fifths at the time of his death; that said Folkerd C. Sebring left him surviving a widow, the defendant Lois Sebring. That said Folkerd C. Sebring, on or about the 25th day of September, 1860, made and executed his last will and testament, which, on the the 21st day of April, 1861, was duly proved before the surrogate of the county of Seneca, and by him was recorded in his said office, a copy of which said will was annexed to the complaint, and made a part thereof; that the defendants Lois Sebring, William Dunlap and William C. Dunlap, were by said will appointed the executors of said Folkerd C. Sebring, and they have accepted and entered upon the duties of said trust. That said Folkerd C. Sebring, in and by his said last will and testament, devised to his said wife, the defendant Lois Sebring, the use of said two fifths of the said land, for and during the term of her natural life. That by the terms of said last will and testament, the whole of said Folkerd C. Sebring's share in the above lands, upon the death of his said widow, is to be sold, and the proceeds thereof to be divided equally, share and share alike, among the defendants—the American Board of Commissioners for Foreign Missions, the Presbyterian House, the American Bible Society and the American Tract Society. But the plaintiff claimed that said provision in the said Folkerd C. Sebring's will, as to the disposition of the reversion of his share of the above lands, and the bequests of the proceeds of the said Folkerd's share of the above lands, after the death of his said wife, to the last mentioned

defendants, are null and void, as being contrary to the provisions of the statutes in such cases made and provided, and by reason of the uncertainty of the said provisions in the will, and because the said societies are not competent to take and hold the said devises as bequests, or to take and hold the moneys arising from the sale of the said lands, for the uses and purposes mentioned in the will. And the plaintiff claimed that the said reversionary interest in the said undivided two fifths of the above described lands, upon the death of the said Lois Sebring, should descend to the heirs at law of the said Folkerd C. Sebring ; and that, as heirs at law to the said Folkerd C. Sebring, she (the plaintiff) will be entitled to the one fifth part of the share belonging to the said Folkerd C. Sebring, upon the death of Lois Sebring ; that the said Jeremiah Slaght and Mary Slaght his wife, in right of the said Mary and Folkerd C. Clarkson, will each be entitled to the undivided one fifth part of the said reversion ; that the said Arad Joy Sebring, Elbert N. Sebring and John C. Sebring, will each be entitled to the undivided one fifteenth part of said reversion, and that the said Ephraim McCoy and Ellen McCoy his wife, in right of the said Ellen, Henry Farrington and Lois Farrington his wife, in right of the said Lois, William Longstreet and Sarah Jane Longstreet his wife, in right of the said Sarah Jane, John Boice, Phebe Boice and Cornelius S. Boice, are each entitled to the undivided one thirtieth part of such reversion. Wherefore the plaintiff prayed that the said premises might be partitioned among the several parties interested, according to the course and practice of this court and the statute in such cases made and provided, by commissioners to be appointed for that purpose. And in case it shall appear that a partition thereof can not be made, without material injury to the rights of the parties interested therein, then that the said premises may be adjudged to be sold, under the direction of this court, and the proceeds of the sale, after paying the costs and charges of this suit, be divided among the said parties, according to their respective

rights and interests therein, and that to that end the rights and interests of the parties interested in the said premises or in the proceeds thereof, may be ascertained and declared by the judgment of this court. And the plaintiff further asked — by reason of the adverse claims of the plaintiff, and of the defendants the American Board of Commissioners for Foreign Missions, the Presbytrain House, the American Bible Society and the American Tract Society, with respect to the reversionary interest in the two undivided fifth shares in the said lands which were owned in fee by the said Folkerd C. Sebring — to have the construction of said will of Folkerd C. Sebring, in respect to the bequests in said will to the last mentioned defendants, settled ; and to have the questions as to its provisions determined, so far as concerns the interests and rights of the plaintiff in the said undivided two fifth parts of said lands which were owned in fee by the said testator, as well as the several rights and interests of the defendants therein ; and that to this end, the following questions in relation to the provisions of said will, may be determined by the judgment of the court : First. Whether the bequest in said will to the American Board of Commissioners for Foreign Missions to be applied as stated in said will, is valid as to any part of said bequest, and if valid as to some part thereof, as to what part the same is valid, and whether the said American Board of Commissioners of Foreign Missions as aforesaid is competent to take and hold the said money for the uses and purposes mentioned in the said will. Second. Whether the bequest in said will to the Presbyterian House, to be applied as stated in said will, is valid as to any part of said bequest ; and if valid as to some part thereof, as to what part the same is valid ; and whether the said Presbyterian House, as aforesaid, is competent to take and hold the said money, for the uses and purposes mentioned in said will. Third. Whether the bequest in said will to the American Bible Society, to be applied as stated in said will, is valid as to any part of said bequest ; and if valid as to some part

thereof, as to what part the same is valid; and whether the said American Bible Society is competent to take and hold the said money, for the uses and purposes mentioned in said will. Fourth. Whether the bequest in said will to the American Tract Society, to be applied as stated in said will, is valid as to any part of said bequest; and if valid as to any part thereof, as to what part the same is valid, and whether the American Tract Society is competent to take and hold the said money, for the uses and purposes mentioned in said will.

The plaintiff asked also for general relief.

The will of Cornelius Sebring was as follows:

" * * * I Cornelius Sebring, of the town of Ovid, &c. being weak and feeble in body, but of sound mind and memory, * * * calling to mind that it is appointed for all men once to die, and that it is the duty of all men, at all times, to be prepared for their eternal change, that his house should be put in order, and his worldly enjoyments settled, do therefore make this my last will and testament, viz: * * * as for my worldly estate, after my decease, be disposed of in manner following: I do order that my body be buried, and that my debts and funeral charges be paid.

First. I give and bequeath to my beloved wife my little wagon, bay mare, &c.

Second. I give to my four daughters, viz: Mary, Ellen, Jane and Catharine, one hundred dollars, in six months after my decease, and each one sixth part of my personal property not otherwise disposed of.

Third. I give and bequeath my son Folkerd thirty acres' of land on which he now lives, my young black mare, two hundred dollars in six months after my decease, and one sixth part of the personal property not otherwise disposed of.

Fourth. I give and bequeath to my son John the farm on which I now live, containing one hundred and one acres, my brown horse, bay horse, sucking colt, farm wagon, sled and farming utensils, and one sixth of my personal property not otherwise disposed of, provided he pay six hundred dollars

legacy, support his mother, and pay fifteen dollars annually to my step-mother.

Fifth. I give to my grandsons, viz. Cornelius Slaght, Cornelius Harris, Cornelius Boiçe and Cornelius Clarkson, fifteen dollars each when they come of age.

Lastly. I do nominate, constitute and appoint my two sons, Folkerd C. Sebring and John C. Sebring, my executors to this my last will and testament; and I do hereby revoke and disannul all former wills and legacies, and ratifying this my last will and testament."

The executors of Folkerd C. Sebring answered separately from the other defendants, alleging that as to most of the allegations in the complaint they had no knowledge or information, sufficient to form a belief; admitting the making of the will by their testator, as alleged, and the contents thereof, and claiming that the devises and bequests therein were legal and valid, and claiming and insisting that upon the death of the said widow, Lois Sebring, the real and personal estate so devised and bequeath to her in said will for and during her natural life, shall be sold by the executors, and the proceeds thereof be divided equally, share and share alike, among the defendants — the American Board of Commissioners for Foreign Missions, the Presbyterian House, the American Bible Society, and the American Tract Society — by said executors, according to the provisions and directions of said last will and testament. Wherefore the said defendants asked that the rights and interests of the respective parties be determined by the court, and the said premises mentioned in the complaint, or the proceeds thereof, be divided among them accordingly; and that the court determine the questions mentioned in said complaint, in relation to the provisions of said will, and any other questions relative to the validity of the devises and bequests contained in said will; and that the costs of the said defendants in this action be paid, either from the avails of said premises, or from the estate of the said Folkerd C. Sebring.

The other defendants' answered separately. The judge, before whom the action was, tried, found the following facts and conclusions of law:

1st. The facts that Cornelius Sebring, named in the pleadings, was the father of the plaintiff, and died at the time stated in the complaint, and at the time of his death possessed and was seised in fee simple of the piece of land for that purpose described in the complaint.

2d. The facts that Folkerd C. Sebring, named in the complaint, was a son and heir-at-law of the said Cornelius Sebring, deceased; and that the said Cornelius Sebring before his death, and on the 2d day of December, 1827, made and published, in due form of law to pass real and personal estate, his last will and testament, a true copy whereof, with a certificate of the surrogate of Seneca county subjoined thereto, was annexed to the findings; and that the thirty acres of land mentioned in said will, and thereby devised to said Folkerd, is the same piece of land described in said complaint.

3d. The conclusions of law, that the said Folkerd C. Sebring, under and by force of the provisions in the said will of his father, Cornelius Sebring, deceased, took an estate in fee in the said thirty acres of land therein devised to him; and the plaintiff has no estate right, title or interest of any kind whatever in such land.

4th. The facts that the said Folkerd C. Sebring died on or about the 14th day of February, 1861, as stated in the complaint; and at the time of his decease had no children, and only a wife, the said Lois.

5th. The fact that the said Folkerd C. Sebring, before his death and at the time stated in the complaint, made his last will and testament, in due form of law to pass real and personal estate, a true copy whereof was annexed to said complaint as schedule "A."

[The disposing clauses of that will were as follows:

"First. It is my will and wish that all my debts of every

description shall be paid, as soon as possible, after my decease, and also all the charges and expenses of my funeral.

Second. I give, devise and bequeath unto my beloved wife Lois, the use of all my real and personal estate and property of every kind, quality and description whatsoever, for and during the term of her natural life, to be by her used for her convenience, comfort and personal benefit.

Third. After the death of my said wife Lois, it is my will and my order, that all my real and personal estate and property of every kind and nature and description, shall be sold by my executor, and that the proceeds thereof be paid over to the following named charitable societies in four equal portions, that is to say: I will and bequeath one fourth of all such proceeds to my executors in trust, to be paid over to the treasurer of the American Board of Commissioners for Foreign Missions, or the person or persons authorized by the said "board" to receive the same, expressly for them, and to apply it to the charitable uses and purposes of said "board." I further will and bequeath to my executors in trust, another fourth part of all the proceeds of my estate, real and personal, to be paid over by them to the trustees of the Presbyterian House, incorporated April 21st, 1865, by the legislature of Pennsylvania, to be expended under the direction and for the appropriate uses of the Home Mission Committee of the General Assembly of the Presbyterian Church in the United States of America.

I also further will and bequeath to my executors in trust another equal one fourth part of my estate, real and personal, or of the proceeds of the sale thereof, to be paid over by them to the person or persons who, when the same shall be payable, shall act as treasurer of the American Bible Society, formed in New York in the year eighteen hundred and sixteen, to be applied to the charitable uses and purposes of said society, and under its direction.

I still further will and bequeath to my executors in trust another, and the last, equal fourth part of my estate, or of

the entire proceeds thereof, both real and personal, to be paid over by them to the "American Tract Society," instituted in the city of New York, or to the properly authorized treasurer of said society, or to the person who shall be acting as treasurer when the same is payable; the same equal one fourth part of all my property, or the avails of it, whether real or personal, to be applied to the charitable uses and purposes of said society.

Fourth. I hereby authorize and empower my executors, in conjunction with my wife "Lois," if they shall judge it to be for the best interest of my estate, to sell all or any part or portion of the personal property at public or private sale, and put the proceeds of such sale at interest; the interest only to be at the disposal and control of my said wife, agreeably to the provisions of the second item of this will.

Fifth. I do hereby authorize and empower my executors, after the decease of my said wife "Lois," to sell all my real and personal estate and property, and to execute and deliver any sufficient deed or deeds of land, for any part and all of my real estate, in their own names as my executors, to any person or persons who may be the purchaser or purchasers thereof, making such conveyance safe and sure to said purchasers.

Sixth. I hereby constitute and appoint my beloved wife "Lois" executrix of this my last will, in connection and conjointly with my friends Wm. C. Dunlap and Wm. Dunlap, of Ovid, Seneca county, New York, the two latter to be my executors, and after the death of my wife, my sole executors, and who shall be invested with all of the rights, powers and authority herein conferred or intended to conveyed in and by this my last will and testament."]

6th. The judge further found the fact that the defendant Lois Sebring, the widow of the said Folkerd, has appeared in this action and put in her answer; and therein insisted that the will of the said Folkerd, her deceased husband, is legal and valid; and claimed and insisted that at his death, the real and

personal estate devised and bequeathed to her by said will during her life, shall be sold, and the proceeds divided and paid, as directed by said will, as by said answer will fully appear.

7th. Conclusion of law. That the said Lois Sebring is the only person who can rightfully object to the validity of said will of her deceased husband; and inasmuch as she did not seek to invalidate it, but on the contrary insists upon sustaining it, neither the plaintiff, nor any collateral relative of the said Folkard, can call it in question.

8th. The conclusion of law, that under the provision in the will directing the real estate to be sold and converted into money, such real estate must be deemed personal property, and the rules of law applicable to such property must govern in carrying into effect the provisions of the will.

9th. The fact that the defendants the Board of Commissioners for Foreign Missions were duly incorporated, and created a body politic, by an act of the legislature of the state of Massachusetts passed on the 20th of June, 1812, and by such act of incorporation, were authorized in their corporate capacity to take, receive, have and hold in fee simple or otherwise, lands, tenements and hereditaments, by gift, grant, devise or otherwise, and also to take and hold by donation, bequest or otherwise, personal estate.

10th. The fact that the defendants the Presbyterian House were duly constituted and declared to be a body politic and corporate by the name of "The Trustees of the Presbyterian House," by an act of the legislature of the state of Pennsylvania, passed on the 21st day of April, 1855, and by such act of incorporation were authorized to purchase and receive, take and hold lands, tenements and hereditaments, goods, money and chattels and all kinds of property and estate, which may be devised or bequeathed or given to them.

11th. The fact that the defendants the American Bible Society were constituted a body corporate by an act of the legislature of this state, passed on the 25th day of March, 1841, for the purpose of publishing and promoting the circu-

lation of the Holy Scriptures, and which act of incorporation conferred on the corporation thereby created the general powers and subjected it to the provisions contained in title third of chapter 18 of the first part of the Revised Statutes, so far as the same were applicable.

12th. The fact that the defendants the American Tract Society were created a body corporate, by an act of the legislature of this state, passed on the 26th day of May, 1841, for the purpose of printing and circulating religious publications ; and which act of incorporation conferred on the corporation thereby created the general powers and subjected it to the provisions contained in title third of chapter 18 of the first part of the Revised Statutes, so far as the same were applicable.

13th. The conclusion of law, that each of the defendants — "The Board of Commissioners for Foreign Missions," "The Presbyterian House," "The American Bible Society," and "The American Tract Society"— is entitled to and has a lawful right to receive, in money, from the executors of the said Folkerd C. Sebring, deceased, and trustees under the same, one fourth part of the real and personal estate of the said Folkerd, after the death of the said Lois Sebring and after the said real and personal estate shall be converted into money.

14th. The conclusion of law that the complaint of the plaintiff ought to be dismissed, with costs ; and the same was ordered to be dismissed, with costs to be adjusted.

The plaintiff appealed from the judgment.


*John E. Seely,* for the appellant.    I. On the 2d day of December, 1827, Cornelius Sebring executed his will, which was duly proved before the surrogate on the 6th of March, 1828. The third section of his will is as follows, to wit : "First. I give and bequeath my son Folkerd thirty acres of land on which he now lives, my black mare, two hundred dollars in six months after my decease, and one sixth part of my personal property not otherwise disposed of."    This is a devise

Harris *v.* Slaght.

of land without words of inheritance, and having taken effect by the death of the testator, before the Revised Statutes, it gave only a life estate to the devisee. (4 *Kent's Com.* 537. 3 *Selden,* 163. 8 *John.* 141. 9 *id.* 222. 11 *id.* 198. 17 *id.* 221, 19 *Barb.* 494.) But it is claimed by the societies that there is enough in the will, when construed together, to take it out of the operation of this rule, and that Cornelius Sebring intended to give his son Folkerd a fee in the thirty acres. The following words, found in the introductory part of the will, "as for my worldly estate after my decease be disposed of in manner following," are cited as showing this intention. This is the only portion of the introduction that bears upon the question raised. The word "estate," unless it be preceded by some other word intended to qualify, enlarge or render certain what the testator intended by its use, does not necessarily include "real property." (4 *Kent's Com.* 662, *note* 1, 10*th ed. citing Molyneux* v. *Rowe,* 39 *Eng. Law and Eq. Rep.* 78.) The case of *Jackson* v. *Merrill,* (6 *John.* 191,) was cited at the special term to show that by the word "estate" the testator intended his whole interest in his real estate. But in that case the testator required his three sons to pay each of his daughters £35 each, out of his "*fast estate,*" and the devise of his lands was upon the condition of this payment. These words were not in the introduction, but in the residuary clause. This decision is founded clearly upon the principle that a fee is given by implication, the testator having imposed upon the devisees the payment of certain legacies of £35 each. Mr. Justice Thompson says: "The charge upon the real estate of thirty-five pounds to be paid to each of the daughters, puts the question beyond a doubt. For it is a rule well settled in the construction of wills, that if a person devises land to another, with direction that the devisee shall pay a gross sum out of it, the devisee shall take an estate in fee, without any other words, though the sum to be paid should not amount even to a year's rent of the land." Ch. Kent (4 *Kent's Com.* 665, 10*th ed.*) says :

"Introductory words to a will can not vary the construction so as to enlarge the estate to a fee, unless there be words in the devise itself sufficient to carry the interest." In the case of *Barheydt* v. *Barheydt,* (20 *Wend.* 576,) it was held that the introductory°clause in a will, showing the intent of the testator to dispose of all his "wordly estate," has not the effect to *enlarge* the estate devised, unless the words of the devising clause are connected in terms with the introductory clause, and import more than a mere description of the property. Chief Justice Nelson says : "They (the introductory words) are often words of course, and are not inappropriate even where the testator intends giving but a part of his interest. They should in some way be connected in the body of the instrument or otherwise with the more important devising clause, in order to have the effect of enlarging the estate. I am unable to perceive such connection here, within the principle or spirit of the case." The case was in the Court of Errors, and the decision was placed solely on the ground that the testator having required the devisee to pay a sum of money out of the estate, it enlarged the devise to him, without words of limitation, into an absolute estate in fee. (20 *Wend,* 581. *Cro. Eliz.* 204. *Cro. Jac.* 599. *Willes,* 108. *Cowper,* 356. 3 *Term Rep.* 356. 5 *id.* 13. 5 *East,* 87.) In *Harvey* v. *Olmsted,* (1 *Comst.* 483,) where the introductory words were, "I order and direct my *real* and personal estate to be divided and distributed as follows," it was held that these words did not enlarge the devise into a fee. In *Olmstead* v. *Olmstead,* (4 *Comst.* 56,) a case arising under the same will, it was held by the Court of Appeals, (Judge Gardiner giving the opinion,) "That the law never enlarges an estate by implication, unless the devise imposes a charge upon the devisee in respect of the lands devised. And when that is done, it takes from the devise the character of a gift, and turns it into a purchase." He further approved of the holding, in 3d *Term Rep.* 354, that neither the terms "rest and residue," following the devise of a partial interest

in lands, nor the word "hereditaments," nor the circumstance that "she was the sole residuary legatee, any or all of them," were sufficient to convey a fee. (4 *Comst.* 56.) The same doctrine is held in *Vanderwerker* v. *Vanderwerker and others*, 7 *Barb.* 221.) That the introductory clause evincing an intent in the testator to dispose of all his worldly estate, will not have the effect to enlarge the estate devised. (*See also Wheaton* v. *Andress*, 23 *Wend.* 452.) In 6*th John.* 191, and 17*th Wend.* 393, the words "estate" and "real property," are used in the devising clause, and not confined to the introductory clause, and the fee was established. Not so much by the use of the word "estate" in the devising clause, as on account of the legacy the devisee was made liable to pay. It was further insisted, at special term, that the will containing no residuary clause relating to real estate, the testator intended to, and did, devise the thirty acres in fee, and 18*th Wend.* 207, 208, was cited to sustain that point. I do not understand that the point was discussed in the case except as a mere incident, and that both the Chancellor and Senator Dickinson place their decision upon the ground that the devisee was directed to pay all the debts of the testator, and the personal property having all been disposed of to the widow, the devisee could have nothing out of which he could make the payments, except he took a fee, and therefore it was the intention of the testator to give a fee. The case of *Frogmorten* v. *Holyday*, (3 *Burr.* 1618,) is not inconsistent with this doctrine. Lord Mansfield places his decision mainly on the ground that the testator had charged his son John with the payment of a legacy of £50. Justice Wilmott places his opinion on the same ground. This very point was raised by counsel in the case of *Harvey* v. *Olmsted*, (1 *Comst.* 490.) Gardiner, J. says: "If the residue of his estate is undisposed of, it presents the ordinary case of a general intention not executed, but it furnishes no reason for departing from the language of the testator, nor any authority to this court in his place to distribute his

property for him." (*See Barheydt* v. *Barheydt*, 20 *Wend.* 580, 581 ; 4 *Comst.* 56.) The case of *Van Derzee* v. *Van Derzee*, (30 *Barb.* 331,) is like the one at bar.

II. The plaintiff claims that the provisions of F. C. Sebring's will, so far as it attempts to dispose of the property after the death of Mrs. Sebring, are void. 1st. As to the American Bible Society and the American Tract Society, these societies can not take by devise. (*Downing* v. *Marshall*, 23 *N. Y. Rep.* 366.) If the provisions of the will for the benefit of these societies are considered as devises of the real estate, then they are wholly void. It is true that the case above cited applies the doctrine of equitable conversion to cases like the present, and holds that although these societies are incapable of taking by devise, they may take the money arising from the sale of the real estate. But has this testator directed absolutely that there shall be such a conversion. The language of the provisions in relation to these societies is, "I further will and bequeath to my executors in trust another equal one fourth of my estate, real and personal, or of the proceeds of the sale thereof," &c. Does not this provision qualify the power given to the executors to sell the lands ? And if valid, does it not authorize them to hold the one fourth of these lands in trust for each of these societies ? If so, the provision for these societies is unquestionably void. 2d. As to the provision for the American Board of Commissioners for Foreign Missions. This society is not a corporation, under the laws of this state. So far as our courts are concerned, it stands in the position of an unincorporated association. The reasoning of Selden, J. in *Owens* v. *Missionary Society*, (4 *Kernan*, 380,) applies with quite as much force to this society as to the voluntary association which was a party to that cause. Our courts have no control over a foreign corporation. They can not enforce the execution of the trust created in this will. 3d. The bequest or devise to the trustees of the Presbyterian House is clearly void. Even if this were a corporation under the laws of this

state, and capable of taking by bequest or devise, a provision in the form of the one in this will would be clearly invalid. It is in effect a bequest to these trustees in trust for the home mission committee of the general assembly. There is no evidence that the general assembly is a corporation, much less that the home mission committee is one. A bequest directly to this committee, or to the general assembly, would be wholly void under the decision in *Owens* v. *The Missionary Society*, cited above. The corporation called The Trustees of the Presbyterian House take no interest in this bequest. They are only the custodians of the money bequeathed. It is to be received and held by the corporation in trust for an unincorporated body, or in the language of the will, to be expended under the direction and for the appropriate uses of the home mission committee. The whole power given to the corporation in this bequest is to hold the money for the use of another body. Had this bequest been to the executors in trust for this home mission committee, to be expended under its direction, and for its appropriate uses, there can be no question but it would have been invalid. The fact that it is a foreign corporation who are to hold the money in trust for this irresponsible body does not render it valid. The charter of The Trustees of the Presbyterian House may give that body the power to take a legacy. It can not have the effect of making the general assembly capable of taking a legacy, nor can it give such power to any of the committees of the general assembly.

III. If the court shall hold that these societies are each and all competent to take the devises or bequests, and hold them for the purposes mentioned in the will, then it is insisted that under chapter 360 of the Laws of 1860, these devises or bequests should abate at least one half, and that upon the death of Lois Sebring one half of the interest of Folkerd C. Sebring in these lands should descend to his heirs. The learned justice, before whom this case was tried, finds as a conclusion of law that Lois Sebring is the only person who can right-

fully object to the validity of the will of her deceased hus-
band, and inasmuch as she did not seek to invalidate it, but
on the contrary insists upon sustaining it, neither the plain-
tiff nor any collateral relative of the said Folkerd can call it
in question. This postion can be sustained only on the
assumption that the statute was made exclusively for the
benefit of the husband, wife, child or parent. That it was
not so intended is manifest. 1st. The language of the stat-
ute is explicit. There is no ambiguity whatever about the
language employed. It provides expressly that no person
having a husband, wife, child or parent shall bequeath or
devise to any of the societies described in the statute, more
than one half of his or her estate, and adds that such devise
or bequest shall be valid to the extent of one half and no
more. It does not purport on its face to be for the benefit
of anybody. It creates an absolute disability in any person
having a husband, wife, child or parent, to bequeath more
than half of his or her property to any of the societies
named in the statute, and goes further, by declaring that
such a bequest shall be valid to the extent of one half, and
no more. In other words, a bequest or devise of the whole
property, will be wholly invalid as to the one half. If any
provisions of a will are void from any reason, every person
who is entitled to receive the property in the event of the
failure of those provisions, can take advantage of the invalid
provisions, and raise the objection as to their sufficiency.
To say that only the persons named in this statute can take
advantage of the invalidity of the will, is to put an interpre-
tation upon this statute wholly unwarranted by its plain
provisions. Where the language of a statute is clear and
unambiguous, we have no right to resort to any extrinsic cir-
cumstances to interpret or explain it. In the language of
Judge Allen, in *McCluskey* v. *Cromwell*, (1 *Kern.* 601,)
"It is not allowable to interpret what has no need of inter-
pretation, and, when the words have a definite and precise
meaning, to go elsewhere in search of conjecture to restrict or

Harris *v.* Slaght.

extend the meaning.   Statutes and contracts should be read and understood according to the natural and most obvious import of the langauge, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.   Courts can not correct supposed errors, omissions or defects in legislation or vary by construction the contracts of parties.   The office of interpretation is to bring sense out of the words used, not to put sense into them." (*See as to same, Purdy* v. *The People,* 4 *Hill,* 384; *Waller* v. *Harris,* 20 *Wend.* 561; *remarks of Johnson, J. in New-ell* v. *The People,* 3 *Seld.* 97; *Jackson* v. *Lewis,* 17 *John.* 475; *People* v. *N. Y. Central Railroad,* 3 *Kern.* 78.) 2d. If the construction given by the justice who tried this cause is to prevail, the object of the statute will be in very many instances defeated.   Take the case of a wife who dies owning real estate only.   If there have been no children born of her marriage, her surviving husband takes no interest in her lands, unless as devisee.   If in such a case a wife has bestowed all her property on benevolent institutions, the husband, even if he is in a position to object to the will, will take nothing by his motion.   The heirs in such a case have a right to one half of the real estate, but are powerless to enforce it. The husband who has no interest whatever in sustaining or defeating the provisions of the will is the only person who can object to its validity.   Again; if in the present case F. C. Sebring's property had consisted entirely of real estate, and he had made no provisions whatever for his wife in his will, she would be in a situation where she would have no interest in sustaining or overthrowing the will.   She would take her dower right in the land in spite of the will.   She would take no more if the will were set aside as to the one half. The heirs would have a present right to one sixth of the land, and a vested remainder in one third if the will is defeated as to the one half.   The wife could maintain no action to set aside the will, for that must be brought by the parties in interest who are the heirs, and only the heirs.   If they can do

nothing then in this case, the object of the statute is entirely defeated. Is it probable that the legislature intended that a will which the statute declares totally invalid as to the one half, should be rendered valid because a person who has no interest whatever in the estate, devised or bequeathed, chooses to acquiesce in the provisions of the will? Again; is the right of the wife, husband, child or parent to object to such a will a personal one, or does it survive? If the wife, fully intending to object to the validity of such a will, dies before she has carried her intentions into effect, does this render the will valid, or does the right to object pass to her personal representatives? Is it a power which she can dispose of by will? If she has commenced an action to set such a will aside, and dies while the action is pending, does her death abate the action? Must the heirs stand with folded arms until an action commenced by the wife has been carried through to a final judgment, and then first be in a condition to assert their rights? It is plain that the construction given to this statute on the trial will lead to manifest inconsistency. 3d. It was claimed on the trial that this statute was founded on the laws of this state which provide that every person must support his wife, parents and children. As there is not and never has been any law obliging a wife to support her husband, in one case at least this argument entirely fails. But there is no force in it in any point of view. If a person wishes to leave his property away from his wife, parents or children, this statute does not prevent him. It merely renders void devises or bequests to certain societies, but any person may still make valid dispositions of his property in other directions than those forbidden by the statute, and yet leave nothing to the persons for whose benefit this statute is claimed to have been made. If this statute was made merely to oblige a man to support his relatives after death it entirely fails in its object. 4th. It was claimed on the trial that the widow would receive less if the will was declared invalid as to the one half than she takes under the

Harris *v.* Slaght.

will. As nobody disputes that the provisions for Mrs. Sebring are valid, and no one proposes to interfere with her life estate in the property, it is unnecessary to dwell on this point. It was also claimed that the will should not be disturbed because the life estate of the widow might be worth 'as much as half of the estate. It would be easy to show by the annuity tables that this is not so, but the argument is not a good one. If the bequests or devises are invalid as to the one half, the fact they are to take effect in the future will not render them valid. If a testator can not bestow property directly upon a corporation he can not do it by suspending the time of payment for a few years. The obvious meaning of the statute is that whatever time the bequests or devises take effect they are valid as to the one half and no more. 5th. The act of 1860 operates in a two fold direction. It renders a testator wholly incapable of devising or bequeathing more than half of his property to these different societies, and it in effect prohibits the societies from taking such devises or bequests to the extent of more than one half. It is as well a prohibition of the legatee or devisee to take, as the testator to give. The law takes away the capacity of a corporation in certain cases to take by devise or bequest, as effectually as if this provision were made a part of the charter of every incorporated society. 6th. If it is allowable in a case where the language is as explicit as the one in question, to inquire into the intentions of the legislature, we need not look far to find the reasons which prompted the passage of this act. It is obvious that it was made not for the benefit of any particular persons, but from reasons of public policy. The same causes which induced the passage in England of the stringent statute of 9th Geo. II, chap. 36, have been operative in this country. It is recited in the preamble of that statute, that :

"Whereas, gifts or alienations of lands, tenements or hereditaments are prohibited or restrained by Magna Charta, and divers other wholesome laws, as prejudicial to and against

the common utility, nevertheless this public mischief has of late greatly increased by means of large and improvident alienations or dispositions made by languishing or dying persons or by others, to uses called charitable uses, to take place after their death, to the disherison of their lawful heirs ; for remedy whereof it is enacted," &c.

If the legislature had set forth the reasons that led to the making of the law of 1860, it is not probable that they would have differed in spirit from those recited in this preamble. The disposition in " languishing and dying persons" to make large and improvident alienations to so called charitable purposes has been a growing public mischief here as well as in England ; and it was universally felt that some legislation was necessary to check this tendency to bestow property upon these benevolent societies. This is especially so in the case of the societies, which are defendants. They are wide spread organizations, with auxiliaries and branches in every state and county. Nearly every clergyman of an evangelical church is a member of one or more of them, and an active agent in procuring money for them. Through these agents, these societies have the readiest access to the beds of the dying, and by appealing to the religious or superstitious hopes or fears of weak minded persons, they are often enabled, as they were in the present case, to extort large donations of property. This law was obviously intended to put a check upon the rapacity of these societies, by limiting the amount which they could take in any event where a testator has any of the relatives mentioned in the statute. That such was the public sentiment which led to the passage of this act, we may see from subsequent legislation. This statute has been repeatedly recognized in succeeding legislation in many acts of the legislature, and in none is the explicit language of this act qualified or essentially varied. (*See Laws of* 1861, *chaps.* 57, 189, 195,) in which the corporations chartered by those acts are expressly subject to this statute.

In the acts incorporating " The Presbyterian Committee

of Home Missions," and " The American Missionary Association," (*Laws of* 1862, *chaps.* 340, 358,) a provision in language almost identical with the act of 1860, is inserted in their charters, with the additional provision that no bequest or devise to these associations, made within two months of the decease of the testator, shall be valid. (*See also, Laws of* 1863, *chaps.* 45, 274; *Id.* 1864, *chap.* 3; *Id.* 1865, *chap.* 368.) The act of 1860 is then no anomaly in the legislation of this state, but only one of many acts showing a settled purpose to restrain and limit bequests and devises for charitable purposes.

7th. We insist, then, that the devises or bequests contained in F. C. Sebring's will to the different societies are wholly void as to the one half. That the plaintiff, or any other person who is entitled to receive the property in the event of the invalidity of the will, has a right to object to its provisions, and that, upon the death of Lois Sebring, one half of the interest of F. C. Sebring in the lands affected by this action will descend to his heirs.

IV. If it shall be determined by this court that the plaintiff does not hold a fee in any part of the thirty acres as heir at law of Cornelius Sebring, deceased, but that she has a fee in one fifth of one half of the real estate of Folkerd C. Sebring, as his heir at law, or if she has inherited any portion of his real estate, then she has a present standing in this court; at least no one can object to her bringing this action. One who holds a remainder in fee may maintain an action for partition. (*Blakeley* v. *Calder*, 15 *N. Y. Rep.* 617.) But this action was brought not only for the partition of the thirty acres, but for a construction of Folkerd C. Sebring's will. His widow and the other executors ask for a construction of this will. If the plaintiff shall be found to have any interest whatever in the property of her brother, F. C. Sebring, then she can as rightfully ask this court to give construction to this will *now*, as to wait until the decease of Folkerd C. Sebring's wife. If it should be held that the societies take one half

the real estate, they are only tenants in common with the heirs at law of Folkerd C. Sebring, subject to the life estate of his widow. They can not claim the exclusive right to any portion of it. They could not claim the entire proceeds of any particular portion of his estate. The construction of a will may be had in an action for partition. (*Hyatt and others* v. *Pugsley and others*, 23 *Barb*. 285.)

V. The Tract Society in their answer admit that the thirty acres, described in the complaint, descended to Folkerd C. Sebring and the other heirs at law of Cornelius Sebring, deceased, and claim that Folkerd was the owner in fee of one half said land. If the Tract Society shall be considered as entitled to one fourth of the real estate, yet having admitted that the plaintiff is entitled to one sixth of the same, the plaintiff must have the one sixth of that one fourth that would enure to the benefit of said society.

*S. G. Hadley*, for the widow and executors of F. C. Sebring. The will of Cornelius Sebring conveyed *the fee* of the premises in question, the thirty acres mentioned in the third clause, to Folkerd C., and not merely a *life estate*. The devise of lands without words of inheritance, in a will taking effect prior to the Revised Statutes, gave only a life estate to the devisee, *unless* from the whole will it could be fairly inferred that the testator's *intention* was to give the *fee;* or in other words, the *intention* of the testator is to be sought out, and when found, *controls.* The American law, and American courts do not, and should not, seek occasions to maintain a doctrine which has its origin with the doctrine of entail, but rather, when the same can fairly be done, seek to maintain and extend the contrary ; and in order to support such intent, to give the fee, the courts have and will give such construction, even against strict grammatical rules ; and to effectuate such intention of a testator, words, and limitation may be transposed, *supplied* or rejected. (*See* *Pond* v. *Bergh and others*, 10 *Paige*, 140.) Though there

Harris v. Slaght.

are no words of perpetuity or inheritance, yet when it appears to be the intention of the testator to dispose of his whole estate, (as was in the case at bar,) the devise amounts to a *fee*. The word *estate* supplies the want of words of inheritance. (*See* 6 *John.* 185.) When the *introductory* clause prefixed to a devise of real estate shows that the testator *intended* to part with his *whole interest*, the subsequent words will, if possible, be construed so as to pass an estate *in fee*, to *prevent an intestacy*, as to any part of his property. (*See* 6 *Cruise's Digest*, 244; 6 *John.* 190; 1 *Salk.* 276.) Judge Thompson, in *Jackson* v. *Merrill*, (6 *John.* 191,) uses this language: "The testator here begins his will in these words: 'And now for settling my temporal *estate*, and such goods, chattels, &c. I do order,' &c. clearly showing an intention to dispose of his whole interest in his estate." Now let us see what is the language in the case at bar. "As for my *worldly estate*, after my decease, be disposed of in manner following," and then the testator goes on and disposes of his entire estate, real and personal, as clearly, and we insist more clearly, showing in this case than in that in 6*th John.* about which Justice Thompson was speaking, the *intention* of the testator to pass the *fee* in the thirty acres to his son Folkerd, as he does in the next clause of the will, to the one hundred and one acres to his son John. The *introductory* clause of the will, the *general scope* of the will, and the fact that there is no *residuary* clause as to the real estate, show strongly the intention of the testator to convey the *fee* and dispose of his entire estate forever. In Maine, (*see Butler* v. *Little*, 3 *Greenl.* 239,) the simple fact that there was no residuary clause as to the real estate, was held sufficient to show the *intention* of the testator to have been to convey a *fee* in land without words of perpetuity, and that doctrine was approved in this state by our late Court of Errors. (*See Spraker* v. *Van Alstyne*, 18 *Wend.* 207, 208.) We submit the testator's intention in this case clearly was to pass the *fee* of the thirty acres, and that this intention is patent from the will taken

together. If this be so, this plaintiff had no interest in the premises when this action was commenced, and the judgment should be affirmed. If Folkerd only took a life estate under the will, he certainly took one sixth by descent and two sixths by purchase, and in that view owned an undivided half of the thirty acres at his death, in fee. The widow and executors of Folkerd C. Sebring insist that his will is valid, and that the *power* given to the executors to sell the real and personal estate owned by him, and pay out the proceeds according to said will, should be executed in accordance with the testator's directions, after the widow's death. The widow does not insist that the act of 1860, chap. 360, shall apply to this case. The widow and executors ask that their costs be allowed against the appellant personally, if judgment is affirmed, and ask to amend their answer by adding at the end thereof the words, *" or by the plaintiff personally,"* if necessary.

*Samuel A. Foot,* for the four societies, who are respondents. I. The devise in the will of Cornelius Sebring to his son, Folkerd C. Sebring, of the thirty acres of land described in that will and the complaint, gave the devisee an estate in fee. It is admitted that a devise of land, without words of inheritance, made and which took effect by the death of the testator, before the Revised Statutes, gave only a life estate to the devisee. All know that this rule had its origin in a desire to establish and maintain the English aristocracy. All lawyers and judges know the rule to be harsh and unjust, and agree with Lord Mansfield, when he said, in 1781, " I verily believe that in almost every case when by law a general devise of land is reduced to an estate for life, the intent of the testator is thwarted." (*Right* v. *Sidebotham, Doug.* 763.) As the intent of the testator universally controls in the construction of wills, judges have always been earnest and astute in searching for evidence in other parts of the will, and the surrounding circumstances, that the testator *intended* to give a fee. (*Denne* v. *Page,* 11 *East,* 603,

*note; opinion of court by Lord Mansfield.*) All courts in England and this country have followed the doctrine of this case. The cases are too numerous to cite. In the will of C. Sebring there is sufficient evidence of the intention of the testator to give his son a fee, to relieve the case from serious doubt. That evidence consists of the following items : 1st. The introductory clause. The testator devises his worldly *estate*, after his death, to be disposed of as follows : *Estate*, by numerous decisions, means his whole interest in his real estate, as well as personal, and makes this introductory clause, one of the strongest kind, to show the intent of the testator. (*See some cases on this subject, Jackson* v. *Merrill*, 6 *John.* 191 ; *Maundy* v. *Maundy, Ca. Temp. Hardwick*, 143 ; *Fox* v. *Phelps*, 17 *Wend.* 393 ; *Earl* v. *Grim*, 1 *John. Ch.* 494.) 2d. The will contains no residuary clause as to the real estate, while it does as to the personal. This, with the aid of the introductory clause, is decisive. (*Frogmorten* v. *Holyday*, 3 *Burr.* 1618. *Deen* v. *Allair, Spenc. N. J. Rep.* 6, 8, 9. *Carder* v. *Adams, Del. Rep.* 439, 441. *Lambert's lessee* v. *Paine*, 3 *Cranch*, 97, 130, 135, 136.) The absence of a residuary clause of real estate has of itself been held sufficient to give a fee. (*Butler* v. *Little*, 3 *Greenl.* 239, 241. *Spraker* v. *Van Alstyne*, 18 *Wend.* 200, *opinion of Walworth, Ch.* 207, 208.) 3d. The devise to the testator's other son, John, clearly carries a fee, because John is to pay some legacies. Yet the devise to the two sons is in the same identical language, and the testator clearly meant the same in each case. 4th. His bequests of his personal property to his wife are in the identical, and to his daughters, substantially, in the same language. (*See a few of the cases on this point, Rose, ex dem. Vere*, v. *Hill, Burr.* 1881, *opinion* 1884 ; *Rose* v. *Pattison*, 16 *East*, 221 ; *Morrison* v. *Semple*, 6 *Binney* 94.) 5th. In the very (third) clause of the will in which the testator gives the thirty acres to this son, he gives him several parcels of personal property, and both real and personal are given by the same words. This is decisive of the

testator's intent to give a fee in the real property, by several of the cases referred to. 6th. The words used, viz: " I give my son Folkerd thirty acres of land on which he now lives," according to several cases, carry a fee. See the words in the following cases, which were decided to carry a fee: *Roe* v. *Pattison,* (16 *East,* 221 ;) *Grayson* v. *Atkinson,* (1 *Wilson,* 333.) And last ; The testator left surviving him a wife, two sons and four daughters. He provided for them all, and dis-posed of all his property, equalizing his real estate between his two sons by legacies, charging John, who had a farm of one hundred and one acres, with paying legacies, and giving Folkerd C. who had only thirty acres of land, a legacy of $200. The scheme of the will would be destroyed by hold-ing that Folkerd C. took only a life estate. It would give the daughters two thirds and John one sixth of Folkerd's por-tion of real estate, which every one who reads the will, will see plainly the father did not intend. This view of the sub-ject is held to be decisive by several of the cases already referred to. The case of *Charter* v. *Otis,* decided by this court, reported 41 *Barb.* 525, is, we submit, decisive in this case. If Folkerd C. Sebring did not take a fee under his father's will in the thirty acres, then at his own death he owned in fee only one half of it—one sixth by descent and two sixths by purchase.

II. If the court are of opinion that Folkerd C. Sebring took an estate in fee in the thirty acres, under the will of his father, then the appellant has no interest in the thirty acres, nor possibility of interest during the lifetime of his widow, and this suit is ended, and the complaint must be dismissed.

III. The societies named in the will of Folkerd C. Sebring are legally entitled to the bequests made to them. The ob-jection made to their right is, that they are not authorized by their charters to take real estate by devise. This objection does not apply to " The American Board of Commissioners for Foreign Missions," for their charter expressly authorizes them to take real estate by devise. Nor does this objection

apply to "The Presbyterian House," for they too are expressly authorized by their charter to take real estate by devise. It perhaps does apply, though that is not conceded, to the American Bible Society and the American Tract Society. They are incorporated under the laws of this state, and both have expressly given to them in their charter the powers contained in title 3, chap. 18, part 1 of the Revised Statutes. *(See their charters, Laws of* 1841, *ch.* 58, *p.* 41; *ch.* 266, *p.* 249.) One of the powers contained in the Revised Statutes thus expressly given to them, is given in these words: "To hold, purchase and convey, such real and personal estate as the purposes of the corporation shall require." The counsel of these societies are aware that there is a general understanding in this state, that these societies can not take real estate by devise, but they are not aware that the question has been directly passed upon by the courts. The counsel for the appellant supposes that a decision to that effect was made by Chancellor Walworth, in the case of the *Auburn Seminary* v. *Childs,* (4 *Paige,* 419,) but the counsel for the societies do not understand the Chancellor as giving an opinion upon, or even alluding to, the extent or character of the authority given by the clause of the statute above quoted. The authority given is general, "to *hold,*" also to *purchase* and *convey.* "To hold," therefore, must mean something more than to purchase. If the phrase was to *purchase and hold,* the term *hold* might well be held to apply to that which was purchased; but it precedes the word *purchase,* and applies to real estate which may be acquired in any way. The counsel for the appellant contends that the two societies incorporated, one by the state of Massachusetts and the other by the state of Pennsylvania, though expressly authorized in their charters to take real estate by devise, can not take in that way real property situated in this state, unless authorized so to do by a statute of this state. He supposes the *lex rei sitæ* applies to this case. The counsel for the societies think *that* a mistake, and suppose that the stat-

utes of the states of our union depend on other principles for their efficacy. But our own statutes appear to have regulated this matter. (*See* 3 *R. S. p.* 3, § 8, *and p.* 138, § 3, *5th ed.*) The counsel for the societies, however, place their right to the legacies given them on very different grounds. The testator gives no real estate, directly or indirectly, to any of these societies, but does just what has been done in this state, in (it may be said) thousands of cases, since these noble institutions were established; directs, after the death of his wife, not only his real, but also all his personal estate, to be turned into money. This is most unquestionably a valid power, and the testator's executors being the trustees he has appointed, must execute it. When it is executed, then there is no real estate of the testator—all is personal. When that is so, and there is nothing but personal property, then the testator directs what shall be done with it. There never has been any objection, to the knowledge of the counsel for the societies, to this mode of giving legacies to them. The form of bequest in this case has been recommended by the societies, and followed for years. In the case of *King* v. *Rundle*, (15 *Barb.* 139,) the testator attempted to give a specific piece of real estate to a designated corporation, and if it could not be done in one way, he desired it might be in another. The law would not allow it to be done in either way. The attempt of the testator was to give a piece of real estate to a corporation not authorized to take or hold it. To effectuate the intentions of a testator, which are laudable, but never to defeat them, the courts always hold that real estate shall be deemed personal, and be disposed of as such, if a testator directs his real estate to be converted into personal. This is a well established rule; but see *Story on Equity*, §§ 790, 791, 793, 1212, 1213, 1214, and cases there cited. The court will see that by a compliance with the direction of the testator to sell his real estate and convert it into money, all the evils our statute of mortmain was intended to cure are avoided.

---

Harris *v.* Slaght.

---

IV. The statute, passed in 1860, prohibiting a testator from giving away, in certain cases, more than half of his estate, does not apply to the will in question. (*Laws of* 1860, *ch.* 360, *p.* 607.) The testator had no child, or parents, and only a wife. Under no possible contingency can any portion of his estate be applied to charitable uses while his wife is living. The object of the act, and the clear intentions of the legislature, were to prevent a man from leaving his parents, wife and childern destitute, by giving away to charitable uses *all* his property. In this case the wife has *all*, during her life. Surely the legislature did not intend to provide a support for her after her death. It seems to be quite clear that the statute does not apply to this case. There is no attempt on the part of the testator to evade the statute. He does not even dispose of one half of his estate while his wife may have need of it, but gives the use of the whole of it to her as long as she may want it. There is another reason why the statute does not apply to this will. The statute affirms every will made in contravention of it, to the extent of one half of the testator's estate. How can that provision be applied to this will ? Which half is valid, and which half invalid ? Again ; it may be that the widow has in fact more than half of her deceased husband's estate. Her life interest may be more than half of the whole ; whether so or not, depends upon her age. Before the appellant can claim to set aside the will, she should allege in her complaint, and prove, that the testator gave more than half of his estate to the societies. She neither alleges nor attempts to prove this essential fact. Other considerations might be presented ; but the above are deemed sufficient to show that the statute of 1860 does not apply to this will. If the statute is to have the construction contended for by the appellant, then it is clearly *unconstitutional.* (*Wynehamer* v. *The People*, 3 *Kern.* 378.)

V. The widow of the testator, only, has a right to question the validity of this will, and she asks to have it sustained and carried into effect. The statute was intended to

secure a support to surviving parents, children and wives, and not to aid or benefit collateral heirs. This is so obvious that no argument is needed to prove it. The very fact that no restraint is placed on a testator, if no parent, wife or child survives him, demonstrates this. It follows, as a legal sequence from this position, that the appellant has no right to come into this court and question the validity of this will, nor has she any right to come here and ask for a partition of the thirty acres, during the lifetime of the widow of the testator.

*By the Court,* JOHNSON, J. The first question in this case, is whether Folkerd C. Sebring took an estate in fee under the will of his father, Cornelius Sebring, in the twenty-nine acres of land in question. There are no words of perpetuity in the devise to Folkerd, and unless it appears from the whole tenor of the will that the testator intended to give an estate of inheritance, the devisee took an estate for life only, and at his decease the inheritance went to the plaintiff, and to his brothers and sisters and their heirs at law, subject only to the widow's right of dower; the devisee having died without issue.

This question has so recently undergone a full, thorough, and elaborate examination in this court, in the case of *Charter* v. *Otis,* (41 *Barb.* 525,) that I shall content myself with stating my conclusions in the case, without going at length into the reasons upon which they are founded. Looking at the entire will of Cornelius Sebring, I am clearly of the opinion, that the devisor intended to give his son Folkerd an estate in fee simple, in the twenty-nine acres, and that such intention is apparent from the terms and provisions of the will as a whole, comparing each provision with the. others. The grounds of this opinion are briefly : 1. The introductory part of the will, which contains these words: "As for my worldly estate, after my decease, be disposed of in manner following." This does not in any respect operate to enlarge the interest devised, and is only material on the question of

the testator's intention. 2. There is no residuary clause, in regard to the real estate, as there is in respect to the personal. 3. Both the real and the personal bequests are made to Folkerd in the same clause, and by the same words. 4. The devise to the testator's son, John, of the home farm, and the bequest of a share of the personal estate, are in the same language, precisely, with the bequest to Folkerd. It is conceded that John took a fee, by reason of the charge upon him, annexed as a proviso to the gift. This of course does not affect the devise to Folkerd, by way of operating to enlarge the estate he would take otherwise. But, it may possibly be referred to, as evincing an intention on the part of the testator to make a final and complete disposition, by his will, of his entire property, leaving no residue or remainder.

The next question which arises is, whether by the terms of the will of Folkerd C. Sebring, and the manifest intention of the testator, the land, as such, is given to the several societies mentioned, or the proceeds of the land merely, after sale, upon the death of the widow of the testator. Two of these societies, namely, "The American Board of Commissioners for Foreign Missions," and "The Trustees of the Presbyterian House," are authorized, in terms, by their respective charters, to take lands by devise. The other two not being expressly authorized to take lands by devise, in their charters, are incapable of taking under our statute; and if the gift is of the land, it is void as respects these two others. But it is entirely clear, I think, that the bequest to these several societies are all of the proceeds of the land after sale, and in no respect of the land itself, as land. The terms of the will are as follows : "After the death of my said wife Lois, it is my will and my order that all of my real and personal estate and property of every kind and nature and description shall be sold by my executor, and that the proceeds thereof be paid over to the following named charitable societies, in four equal portions." Then follow provisions giving to his executors, in trust for each of said societies, one fourth part of the whole of

such proceeds. This, upon the well established rule of equitable conversion, constitutes the several bequests to the several societies gifts of money instead of land. Both points under this head are entirely settled in *Downing* v. *Marshall*, (23 *N. Y. Rep.* 366.)

The third important question is, whether the statute of 1860 relating to wills, operates upon the will of Folkerd C. Sebring, and affects its provisions in respect to these several societies. At the time of making the will in question, and at his decease, the testator had a wife, but no child or parents. He left him surviving sisters and the children and heirs at law of a deceased brother, and sisters. The statute (*Sess. Laws of* 1860, *chap.* 360,) provides in the first section that "no person having a husband, wife, child or parents shall by his or her last will and testament devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one half part of his or her estate after the payment of his or her debts." It further provides that "such devise or bequest shall be valid to the extent of one half and no more." The second section repeals "all laws and parts of laws inconsistent with this act." On behalf of the plaintiff it is insisted, that if the provisions in the will in favor of the several societies are to be regarded as bequests of money, instead of devises of land, they are void to the extent of one half, by the above statute. On the other hand, the counsel of these several corporations strenuously contends, that inasmuch as the plaintiff does not sustain any such relation to the testator as the statute designates, she can not be heard to raise this question. The position taken is, that this statute was made for the benefit and protection of the husband, wife, child, or parent of the testator, and no other parties or persons, and that any one not sustaining either of these relations to a testator, can have no standing in court to litigate a question of this character. This view of the policy of the statute was sustained by the learned

Harris *v.* Slaght.

judge at special term, and it was there held that the plaintiff could not contest the validity of the will upon that ground. I am unable to concur in this view of the scope and policy of this statute. There would be great force in this position if the testator, standing in either of these relations to others, was restrained generally from disposing by will of more than a certain amount or proportion of his property, either to corporations generally, or to persons other than those thus related. But the restraint is only against corporations of a specified character or description, and not even corporations generally. And as respects individuals, there is no restraint whatever. There is nothing whatever in the provisions of this act to prevent a testator, thus related, from giving his entire estate to other corporations or to other individuals. This consideration, as it seems to me, goes very far to establish the contrary proposition, that the statute had a far broader and more general design than the protection and assistance of certain specified relatives of a testator, and looks rather to the establishment of a general public policy, than to the advancement of private personal interests. Manifestly, I think, the spirit and policy of this statute is the same that dictated the provision of the Revised Statutes, that "no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter, or by statute, to take by devise." This provision of the Revised Statutes was declared in *Downing* v. *Marshall,* (*supra,*) to be a prohibitory enactment, "resting on a mortmain policy as distinctly as any act of the British parliament." This being so, it is difficult to perceive, or suggest, any satisfactory reason why any heir at law of the testator, entitled to share in the estate, in case of the failure of the will, or the establishment of its invalidity in whole or in part, may not come into court in some authorized manner and have an adjudication upon such will. It is claimed by these incorporated legatees that the widow of the testator is the only person who can raise the objection. But she has no interest in raising it. The will

is in all respects valid as to her, and its provisions in her favor entirely satisfactory. She has the use of the entire estate, real and personal, during her life, and has no interest in the remainder. This is entirely satisfactory to her, and there would be no sense or propriety in her raising objections, or entering into a contest, to her own injury. The only proper persons to do this, manifestly, are the heirs at law who are entitled to the remainder after the determination of the life estate, provided these provisions which would then alone stand in their way, shall be adjudged in whole or in part illegal and void.

Our judicial system would be lamentably defective if the only parties legally entitled to property attempted to be conveyed or bequeathed contrary to law, could not be heard to object to the illegal provisions of the instrument which alone stood in the way of the complete enjoyment of their rights.

I can have no doubt whatever that the plaintiff is entitled to maintain an action to have the validity of the provisions of the will in question adjudicated upon and determined.

By this will the widow gets only the use of the estate for her life, and at her death the entire estate, real and personal, is to be sold and converted into money and paid over in equal parts to these four corporations. This is in direct and plain violation of the express provisions of this statute. The testator attempted to do what the statute expressly prohibits, and the entire bequests to these societies would be nugatory and void upon well settled principles but for the provision which declares such a devise or bequest valid for one half, and no more. If these views are correct, the heirs at law of the testator have not and never can have any right to the possession of the real estate, and the action, so far as it seeks a partition of the land, can not be maintained. The widow has the sole right of use and occupancy during her life, and at her death the executors are expressly ordered and directed to sell the estate and convert it into money. Whatever may be said of this as a trust, it is clearly valid as a power in

trnst in favor of these corporations, as was expressly determined in *Downing* v. *Marshall,* (*supra.*)

The result of the whole is, that at the death of the widow of the testator the executors are to convert the whole estate, real and personal, into money, and pay one half thereof to the several societies in the proportions specified in the will, and the other half to the heirs at law of the testator or their assigns in the proportions to which they are by law entitled, after first paying the costs of this action, which are to be charged upon such fund.

Judgment accordingly.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]